**Jimmie Oscar COLE, No. 74450,
Petitioner,**

v.

**A. E. SLAYTON, Jr., Superintendent of
the Virginia State Penitentiary,
Respondent.**

**Civ. A. No. 73–C–87–A.**

United States District Court,
W. D. Virginia,
Abingdon Division.

May 31, 1974.

Birg E. Sergent, Pennington Gap, Va., for petitioner.

Linwood T. Wells, Jr., Asst. Atty. Gen., Richmond, Va., for respondent.

OPINION

TURK, Chief Judge.

Jimmie Oscar Cole, Jr. pled guilty and was convicted of robbery in the Circuit Court of Russell County, Virginia on September 8, 1958. He was sentenced to serve a term of twenty-four years in the penitentiary. He now petitions this court for a writ of habeas corpus alleging that he was denied effective assistance of counsel and because of this, his guilty plea was involuntary. The record indicates that these issues were presented to the Virginia Supreme Court in a petition for a writ of habeas corpus which was denied on January 30, 1973,

---

13. Cox v. Remillard, 237 F.2d 909, 912 (9th Cir. 1956).

thus satisfying the requirement that state court remedies be first exhausted.

Respondent has furnished the court with the records of petitioner's indictment, trial and sentence. In addition, this court conducted a plenary hearing on January 7, 1974, to supplement the state court records, at which time, testimony was received from petitioner and Mr. Stephen Quillen. The testimony of M. M. Long, Jr. (now Judge Long), from a September, 1961 habeas corpus proceeding for petitioner's co-defendant was incorporated into the record by stipulation.

Petitioner along with James Perry Bowman, Jr. and Charles Ray Thomas were indicted by a Russell County grand jury on September 8, 1958, for the armed robbery of John Patton Robinson. The order of conviction indicates that on September 8, 1958, petitioner and the above named co-defendants were brought before the court at which time M. M. Long, Jr. and Stephen Quillen were appointed to represent petitioner and James Perry Bowman, Jr. The order of conviction further indicates that after consulting with their counsel, each pled guilty; sentencing was deferred pending preparation of a presentence report.

█ In support of his claim of ineffective assistance of counsel, petitioner relies on the well established rule in this circuit that an interval of one day or less between the appointment of counsel and trial raises the presumption that the defendant was denied effective assistance of counsel and shifts the burden of persuasion to the state. E. g., Garland v. Cox, 472 F.2d 875 (4th Cir.1973); Stokes v. Peyton, 437 F.2d 131 (4th Cir.1970); Twiford v. Peyton, 372 F.2d 670 (4th Cir.1967). Respondent does not deny that petitioner has established a *prima facie* case, but argues that the state has overcome this by affirmative evidence showing the absence of prejudice from the late appointment of counsel in this case. The issue is thus whether the state has overcome the presumption by affirmatively showing the lack of prejudice.

Petitioner testified at the plenary hearing that he only remembered being represented by M. M. Long, Jr. and thought that Mr. Quillen was representing Mr. Bowman. Mr. Quillen testified that he was appointed jointly with Mr. Long to represent petitioner and Mr. Bowman. The order of conviction would appear to support Mr. Quillen's version although the court notes that the short period of time actually spent by the two attorneys consulting with their clients could easily have created the impression that each defendant was represented by a separate attorney. Petitioner stated that the time spent in court could not have been much over an hour and that he only spoke to Mr. Long for two or three minutes before pleading guilty (TR. 29, 32). Mr. Quillen testified that he had not recollection as to how long the case took beyond the fact that everything occurred between 1:00 and 5:00 P.M. (TR. 44).

Petitioner testified that he did not remember speaking with Mr. Quillen nor did he remember discussing the crime with Mr. Long. He stated that he remembered being told by Mr. Long that he would probably get a longer sentence or life imprisonment if he went to trial, but stated that Mr. Long did not indicate what sentence he could expect by pleading guilty (TR. 30). Mr. Quillen did not remember specifically advising the two defendants to plead guilty although he thought that he and Mr. Long might have "told them that was possibly their only alternative." (TR. 42). Mr. Quillen stated that the choice to plead guilty was theirs. (TR. 43).

Mr. Quillen also indicated that he was sure that he and Mr. Long advised the defendants what the maximum sentence was—life imprisonment, but did not recall telling the defendants of how severe jury sentences had been in the past.

When asked by counsel for respondent at the plenary hearing why he was not disturbed by Mr. Long limiting his representation to advising him to plead guilty, petitioner stated, "Because I was guilty." (TR. 13). Asked why he did

not ask any questions of his counsel when advised to plead guilty, petitioner stated he was "kind of scared." (TR. 22). Petitioner also stated that he thought he might get a lighter sentence by pleading guilty because he would be saving the state the expense of a trial, although he stated that this was not mentioned by his counsel. (TR. 21). When asked why he was dissatisfied with the representation he received, petitioner stated that he felt as though he received too much time. (TR. 24). Mr. Quillen stated that he remembered discussing the case with the defendants prior to trial and although he could not remember specifically what either of them said, they did admit that they were guilty. (TR. 39). He further stated that since they admitted their guilt he "surmised from that that they had no defense." (TR. 41).

Petitioner stated that his lawyer never discussed his right to a jury trial or the possibility of his subpoenaing witnesses. (TR. 31). He also was frank to admit that he knew of no witness who could have helped him. (TR. 40). Mr. Quillen remembered advising the defendants of their right to a jury trial and leaving the decision to plead guilty to them. (TR. 40, 43). When asked on cross-examination if he or Mr. Long had interviewed any witnesses, Mr. Quillen stated:

"Not to my recollection. I will say this: As I recall, the crime had been committed oh, maybe sixty days or more prior to this, and I heard on the street and in the Courthouse—I was fairly familiar with what the facts were. I had heard it discussed." (TR. 44).

Following the guilty pleas, Mr. Quillen and Mr. Long made a motion for a pre-sentence report, and according to Mr. Quillen's testimony, they went to the jail to talk to petitioner and Mr. Bowman about information that could be passed on to the probation officer. Petitioner testified that he remembered the guilty plea and sentencing as having been a single proceeding, but the state records support Mr. Quillen's recollection that sentencing was delayed.

The stipulated testimony of Mr. Long added very little information due to his lack of recollection. It is nevertheless of interest in that it was taken in September, 1961, and at that time Mr. Long stated that although he could remember discussing the case with defendants in the Lebanon jail, he could not say positively whether the discussion had occurred before or after they pled guilty. This is noteworthy because it is clear from the testimony at the plenary hearing before this court that petitioner was not seen or represented by any lawyer before being taken from jail to court on September 8, 1958. Mr. Quillen also testified that he "specifically" remembered talking to petitioner and Mr. Bowman in jail *after* they pled guilty. (TR. 42). On the other hand, Mr. Quillen's testimony with respect to what occurred prior to petitioner pleading guilty, quite understandably, was not always based on specific recollection. Thus, although he stated quite positively that it was petitioner's choice to plead guilty, he added:

"And the reason I say that is because I have never insisted that any client that I've ever had enter a plea of guilty or not guilty. I explain the alternatives and leave the choice to them." (TR. 43).

At the time of petitioner's trial, Mr. Quillen had been practicing law for less than a year and, this was only the second or third felony case in which he had been involved. (TR. 37, 38).

In arguing that petitioner's *prima facie* case of ineffective assistance of counsel was rebutted, respondent first contends that petitioner's testimony was couched in terms of recollection and was contradicted in certain respects by the record, whereas Mr. Quillen's testimony was positive and direct. The court notes that much of Mr. Quillen's testimony was also couched in terms of his recollection—as one would expect after 15 years. And although petitioner did

fail to recall specifics, he was frank to so admit and impressed the court with his forthright and credible manner. He candidly admitted his guilt and indicated that he was aware that his memory was at odds with the state court records in some respects. (TR. 33).

Despite the conflicts in testimony at the plenary hearing, the following facts in support of petitioner's claim are clearly supported and the court so finds. Petitioner was arrested on or around July 11, 1958, for robbery and was kept in jail without speaking to an attorney until September 8, 1958. On the afternoon of September 8, 1958, the grand jury indictment of petitioner and his co-defendant was handed down; Stephen Quillen and M. M. Long, Jr. were appointed to represent petitioner and Mr. Bowman; and petitioner pled guilty on the advice of his counsel. Petitioner was under the impression created by his counsel that pleading guilty would result in a lighter sentence, but he was given no specific information by which to make an informed choice. No investigation of the crime was undertaken by petitioner's counsel nor was the crime or the options open to petitioner discussed with him before he pled guilty. No plea bargaining was attempted. At the time he pled guilty, petitioner was twenty years of age and had a fifth grade education but could not read or write. Following the plea of guilty, no evidence was received by the court.

■ Respondent argues that because petitioner admitted his guilt, had been identified by the victim, and had no alibi, counsel did all that was necessary in this case. In Garland v. Cox, 472 F.2d 875 at 879 (4th Cir.1973) Judge Sobeloff stated:

"The primary input of the attorney to his client's case is that of professional expertise. Even a simple criminal case, meticulous investigation and thoughtful legal analysis will often reveal a panoply of issues—to which defendant, a layman, will be oblivious."

This court fails to see the "professional expertise" brought to bear by counsel in petitioner's behalf.

■ To accept respondent's argument —that because petitioner was guilty and had no defense, there was nothing further for his lawyer to do beyond recommending him to plead guilty—is tantamount to saying that no lawyer was even required in this case. But the fact that a defendant is without a doubt guilty cannot be said to obviate the need for the professional assistance of an attorney. And such assistance is not satisfied in terms of the Sixth Amendment by a "perfunctory appearance by counsel who does nothing whatever before or during trial to advise a client or to protect his rights except to acquiesce with the client's wishes." McLaughlin v. Royster, 346 F.Supp. 297, 300 (E.D.Va.1972).

In Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the Supreme Court stated:

"That a guilty plea is a grave and solemn act to be accepted only with care and discernment has been long recognized. . . . But the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge. Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." 397 U.S. at 748, 90 S.Ct. at 1468.

This solemn act of pleading guilty with the drastic effect on a defendant's constitutional rights resulting therefrom, see Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), requires more from a lawyer than occurred in this case if the constitutional right to counsel is to have any meaning whatsoever in the context of aiding a guilty defendant. Petitioner was constitutionally entitled to have a lawyer

thoughtfully and affirmatively pursue the factual and legal underspinnings of his case. This court has no doubt that this did not occur in petitioner's case.

Mr. Quillen testified that because petitioner admitted his guilt, he "surmised" that no defense was available. He further stated that he was familiar with the facts from having heard it discussed on the street and in the courthouse. But even assuming the reliability of counsel's information and "surmise", there was clearly more that should have been done to satisfy the Sixth Amendment right to effective assistance of counsel. The adequacy of petitioner's arrest and indictment in light of state and federal standards are obvious grounds that should have been explored. An independent investigation including the interviewing of witnesses, although seemingly futile in the face of petitioner's admitted guilt, could easily have uncovered mitigating factors leading perhaps to a request that petitioner's trial be severed from that of his co-defendant.

One of the more obvious deficiencies in this case was the failure to attempt to plea bargain; the explanation given being that counsel had nothing to bargain with. This explanation ignores the fact that all defendants, no matter how overwhelming their guilt, have one bargaining point—the plea itself. Whether a prosecutor will agree to accept a plea of guilty in return for a reduced charge or recommended sentence will, of course, depend upon any of a number of factors, but the point is that this possibility should have been attempted.

For the reasons stated, the court holds that petitioner's conviction was obtained in violation of his right to effective representation of counsel guaranteed by the Sixth and Fourteenth Amendments. Accordingly, petitioner's petition for a writ of habeas corpus will be granted subject to the right of the state to retry petitioner within a reasonable time.