**Virginia Jo HARRIS, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 281S29.

Supreme Court of Indiana.

July 13, 1982.

Harriette Bailey Conn, Public Defender of Ind., Melanie C. Conour, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is an appeal from the denial of a petition for post-conviction relief under Ind. R.P.C. 1. The petitioner, Virginia Jo Harris, was charged with murder in the second degree, Ind.Code Ann. § 35–1–54–1 (Burns 1975) (repealed), and convicted after trial by jury in 1977. She was sentenced to a prison term of not less than fifteen nor more than twenty-five years. The convic-

tion was affirmed on direct appeal, *Harris v. State*, (1978) Ind., 382 N.E.2d 913.

In 1979, the petitioner filed a petition for post-conviction relief, alleging that she was denied the effective assistance of counsel because of the failure of defense counsel to communicate offers of a plea negotiation made by the prosecution, and to pursue plea negotiations. The petition was denied after a hearing, and this appeal follows the denial of the motion to correct error. The sole issue on appeal is whether the post-conviction relief court erred in finding and concluding that Harris was effectively represented.

In a proceeding for post-conviction relief, the petitioner has the burden of establishing his grounds for relief by a preponderance of the evidence. Ind.R.P.C. 1, § 5. The judge hearing the petition is the sole judge of the weight of the evidence and the credibility of witnesses. *Turman v. State*, (1979) Ind., 392 N.E.2d 483. On appeal from an adverse judgment, the petitioner must demonstrate that "the evidence as a whole was such that it leads unerringly and unmistakably to a decision in his favor; that is, one opposite to that reached by the trial court." *Sotelo v. State*, (1980) Ind., 408 N.E.2d 1215, 1216.

The petitioner's argument is that although no binding offer of a plea bargain was made by the prosecution, the failure of her counsel to communicate to her discussions about the possibility of a plea bargain, and the failure of her counsel to attempt to negotiate a plea agreement denied her the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States, and by Art. 1, § 13, of the Constitution of Indiana. Because no binding offer was made, petitioner argues that this is a case of first impression in Indiana and she relies on the authority of the American Bar Association Standards for Criminal Justice, Standards Relating to the Defense Function (ABA Standards) for the proposition that there was a duty to communicate certain conversations and an absolute duty to pursue plea negotiations in the absence of a prosecution offer.

### 1. Failure to communicate discussions

At the hearing on post-conviction relief, evidence was adduced which showed that two different deputy prosecutors on two different occasions discussed with defense co-counsel Brinkmeyer the possibility of a plea bargain. The first discussion was held early in the criminal proceedings. Defense counsel Brinkmeyer testified that he had a conversation with deputy prosecutor Carithers who said of the case that it was an unfortunate set of circumstances and that it would perhaps be appropriate if the petitioner could plead guilty to voluntary manslaughter. Brinkmeyer characterized this exchange as merely a discussion and not an offer and said that he related the conversation to senior defense co-counsel Rice. Rice testified that he recalled Brinkmeyer's relating Carithers "expression" that the charge might be too great for the facts of the case. Deputy Prosecutor Bowers testified that three weeks before the trial he had a brief discussion with Brinkmeyer in which Bowers asked if Brinkmeyer could check with Rice about whether there was some possibility of a plea to voluntary manslaughter. Bowers testified that at the time he did not have authority to offer a binding plea bargain and that the remark was made entirely on his own initiative.

The post-conviction relief hearing judge found as facts that neither deputy prosecutor had authority to offer a binding plea bargain, and that both conversations referred to above "were casual conversations without authority from the Prosecutor or Chief Prosecutor and were not of such a binding nature which required communication with the client."

■ In *Curl v. State*, (1980) Ind., 400 N.E.2d 775, this Court adopted the ruling of the Court of Appeals in *Lyles v. State*, (1978) Ind.App., 382 N.E.2d 991, that if a defendant's counsel failed to inform the defendant of a plea offer, we would be compelled to reverse a conviction and permit the defendant to pursue the plea negotiations or to be retried. The *Lyles* court adopted as persuasive authority the then-extant A.B.A. Standard § 6.2(a):

"In conducting discussions with the prosecutor, the lawyer should keep the accused advised of developments at all times and all proposals made by the prosecutor should be communicated promptly to the accused."

We reaffirm that rule here, but we hold that the post-conviction relief judge's finding that the discussions did not rise to the level of "developments" or "proposals" which should have been communicated promptly to the accused was not shown to be erroneous by the petitioner.

### 2. Duty to pursue plea negotiations

■ The petitioner argues that under the A.B.A. Standards, defense counsel had an independent and absolute duty to pursue plea negotiations and that the failure to do so was a denial of the effective assistance of counsel. This duty, she argues, was set forth in A.B.A. Standards, First Edition, 1971, as follows:

"6.1(b) When the lawyer concludes, on the basis of full investigation and study, that under controlling law and evidence a conviction is probable, he should so advise the accused and seek his consent to engage in plea discussions with the prosecutor, if such appears desirable.

6.1(c) Ordinarily the lawyer should secure the client's consent before engaging in plea discussions with the prosecutor."

These sections of the First Edition, 1971, were not approved for the Second Edition, approved February 12, 1979. The Second Edition contains the following provision:

"Standard 4–6.1(b) A lawyer may engage in plea discussions with the prosecutor, although ordinarily the client's consent to engage in such discussions should be obtained in advance. Under no circumstances should a lawyer recommend to a defendant acceptance of a plea unless a full investigation and study of the case has been completed, including an analysis of controlling law and the evidence likely to be introduced at trial."

Neither the earlier version of the standard, nor the standard as revised and approved, imposes an absolute duty to attempt plea negotiations, as the petitioner argues. The language of both versions unequivocally treats the duty as one arising only after the lawyer has evaluated the strength of the State's case. Indeed, the commentary on the First Edition stated that "Plea discussions should be considered to be the norm and failure to seek such discussion an exception unless defense counsel concluded that sound reasons exist for not doing so. In some cases the factual or legal situations or considerations of strategy may dictate that no overtures to the prosecution be made."

Defense counsel testified that he discussed the subject of plea negotiation with petitioner and concluded that he would not engage in plea negotiations without first receiving a more firm proposal from the prosecution. That stance was justified here. The victim was a police officer and counsel may well have believed that the prosecution desired a full presentation of evidence at trial and would not be entirely dissatisfied with the outcome so long as it was a conviction at some level. The only possible motivation, therefore, for acceptance of a plea from petitioner to a lesser charge would stem from the fear of total acquittal on self-defense. Defense counsel may further have believed that a first expression of eagerness to engage in plea negotiations by him would have immediately dispelled any fear of acquittal, thereby foreclosing all possibility of successful negotiations. Viewing the posture of the case in this light, defense counsel was warranted in taking a wait-and-see stance in hopes that the self-defense claim, of its own weight, would precipitate a first firm proposal from the prosecution.

■ The petitioner also attacks the post-conviction relief hearing court's finding that "there is no direct evidence that the defendant was fully apprised of a plea of guilty as to any lesser or included offenses, but the court finds it would not have affected the result of this cause as the Prosecutor would not have accepted a plea to a lesser included offense." The petitioner argues that even though the prosecutor indi-

cated at the hearing that while the case might have been questionable, it should be tried, this statement cannot be interpreted to mean that if an offer had been made and recommendation of acceptance been put forward by trial counsel, no agreement could have been reached. The prosecutor testified that "my stand on this particular case was that there was no—nothing could be done and that it had to be tried." Thus there was evidence supporting the judge's finding, and the petitioner does not satisfy the burden of showing that the evidence led unerringly and unmistakably to the opposite conclusion.

The decision of the trial court is affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.