[Nos. 30400-3-I; 23620-2-I. Division One. July 3, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. EDWARD LEE KING, *Appellant*.

*In re the Personal Restraint Petition of* EDWARD LEE KING, *Petitioner.*

392

*Patricia Novotny*, for appellant.

*James Morrissey Whisman, King County Deputy Prosecuting Attorney* and *Talis Merle Abolins, Thomas J. Young, Assistant Attorney General*, for respondents.

Agid, J. — Edward Lee King appeals his minimum term for five counts of first-degree rape set by the Indeterminate Sentence Review Board (Board). He claims the Board violated his Fifth Amendment right against self-incrimination when it based the minimum term on uncharged rapes he admitted to while in the Sexual Offender Program (Program). His Personal Restraint Petition (PRP) has been consolidated with this appeal. We affirm the trial court and dismiss his PRP, holding that the Fifth Amendment right does not apply when the Board sets a minimum term after the court has imposed a suspended sentence. Even if it applied, King waived the right by failing to invoke it. Because his interviews were not custodial interrogations and he was not under a realistic threat of criminal prosecution when he made the statements, he cannot satisfy either of the exceptions to the waiver rule.

## I

### FACTS

King pleaded guilty to two counts of first-degree rape while armed with a deadly weapon in King County and

three counts of the same crime in Snohomish County. He was sentenced to a maximum term of 20 years on each count. The trial courts ordered that the two King County counts run consecutively, and that the three Snohomish County counts also run consecutively, but that the latter be concurrent to the King County counts.

Following an initial evaluation at Western State Hospital (Western), the trial court determined that King was a sexual psychopath and amenable to treatment. The court suspended his sentence on the condition that he enter, participate in and successfully complete the Program at Western. Snohomish County transferred venue and jurisdiction of the Snohomish County convictions to King County.

King participated in the Program for nearly three years, completing all 10 steps of the Program. In February 1986, the staff at Western reported to the court that although he had completed the Program, King was not safe to be at large, had received the maximum benefit of treatment and should not be recommitted for further treatment. The King County Superior Court revoked his suspended sentences and reinstated the original sentences in both King and Snohomish Counties with credit for time served in the Program.

The Board set an exceptional 310-month minimum term for King. In setting the sentences outside the Sentencing Reform Act (SRA) guidelines, the Board relied on King's admission during treatment at Western that he had committed 50 to 55 other sexual assaults. In his PRP, King challenges the Board's reliance on the uncharged and unproved crimes to which he admitted, alleging he was not warned that the admissions could be used against him. He claimed he was specifically advised by his therapists that all of his admissions would be kept from the courts and that fully admitting all of his crimes was a treatment requirement.

The superior court held a fact-finding hearing to determine whether King was warned that his admissions

were not confidential and could be used against him and whether admitting all his crimes was a treatment requirement. On remand, King also moved to withdraw his guilty pleas and to vacate the judgments, the probation revocation and the Board's minimum term. The trial court denied the motions in an oral ruling on March 5, 1992. King appealed.

Written findings entered May 8, 1992, were signed by judges other than the trial judge. While the appeal was pending, we ordered that findings and conclusions signed by the judge who heard the evidence and arguments be entered. On May 2, 1994, the trial judge signed the May 8, 1992 findings of fact and conclusions of law and entered orders denying King's motion to vacate his minimum terms and dismissing his PRP.[1]

## II

### MOTION TO WITHDRAW GUILTY PLEA

We first must decide whether the trial court erred in not allowing King to withdraw his guilty pleas. He argues that the State did not meet its burden of clarifying the potential consequences of his guilty pleas, specifically the possibility of consecutive sentences.

■ The State bears the burden of proving that a guilty plea was voluntary and made with full knowledge of the consequences. *Wood v. Morris*, 87 Wn.2d 501, 507, 554 P.2d 1032 (1976). Here, the trial court found that the plea documents and the colloquies with the judges and prosecutors from King and Snohomish Counties advised King of the consequences of his guilty pleas.

■■ Where the trial court has weighed the evidence, appellate review is limited to determining whether substantial evidence supports the findings and, if so,

---

[1]King assigns error to the findings of fact and conclusions of law signed by judges other than the trial judge. Since proper findings have since been submitted and King has not argued that the erroneous procedure prejudiced him, the issue is moot and we do not address it.

whether the findings support the conclusions of law. Evidence is substantial if it is sufficient to persuade a fair-minded person of the truth of a declared premise. *Ridgeview Properties v. Starbuck*, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982).

When King was pleading guilty to the King County charge, the prosecutor asked:

> You understand . . . if you are not accepted by Western State Hospital, or if you fail to complete that program at Western State Hospital, that the State will be recommending prison, and that we will be recommending that those prison terms be served consecutively, one after another?

King replied that he understood.

The guilty plea form in Snohomish County reflected a maximum term of 20 years to life as to each count. The trial court found that King understood the meaning of the words "consecutive" and "concurrent" and concluded that the pleas were made knowingly, voluntarily and competently. Substantial evidence supports those findings and conclusions, and we will not disturb them.

## III

### PRIVILEGE AGAINST SELF-INCRIMINATION

The next issue is whether the trial court erred in refusing to vacate King's exceptional minimum term and revocation of his suspended sentence because both were based on disclosures he made while undergoing treatment at Western.

The Fifth Amendment commands that no person shall be compelled in any criminal case to be a witness against himself. Because it protects a criminal defendant's liberty interest, the right against self-incrimination prevents the government from compelling a defendant to testify where his testimony could be used to enhance his sentence. *United States v. Wilson*, 598 F. Supp. 138, 142, (E.D. Pa. 1984), *citing Estelle v. Smith*, 451 U.S. 454, 68 L. Ed. 2d 359, 101 S. Ct. 1866 (1981) (right against self-

incrimination applies to the penalty phase of a capital murder trial).[2] This is because imposing a sentence after guilt is determined is part of the criminal proceeding. *See State v. Post*, 118 Wn.2d 596, 604, 826 P.2d 172, *modified,* 837 P.2d 599 (1992).

 In contrast, there is no constitutionally protected liberty interest in the possibility of parole. *In re Ayers*, 105 Wn.2d 161, 164, 713 P.2d 88 (1986); *Greenholtz v. Inmates*, 442 U.S. 1, 60 L. Ed. 2d 668, 99 S. Ct. 2100 (1979). Therefore, in revoking probation and parole, defendants are not entitled to any more than minimal due process safeguards. *See, e.g., In re Locklear*, 118 Wn.2d 409, 823 P.2d 1078 (1992). Compelled incriminating statements may be used in revoking probation and parole, and the privilege against self-incrimination does not apply to those proceedings. *Minnesota v. Murphy*, 465 U.S. 420, 434, 79 L. Ed. 2d 409, 104 S. Ct. 1136 (1984). These proceedings are not criminal in nature because the defendant has already lost any expectation of liberty at the time he was sentenced to the maximum term imposed by the court. *See generally, State v. Ayers, supra*. Similarly, where the court has already sentenced a defendant, the prosecution phase has ended and the Board's minimum term decision does not invoke the full panoply of rights due a defendant in a criminal case. *In re Whitesel*, 111 Wn.2d 621, 630-31, 763 P.2d 199 (1988); *In re Sinka*, 92 Wn.2d 555, 566, 599 P.2d 1275 (1979).

██ Setting a minimum term under the pre-SRA sentencing scheme is the same kind of administrative procedure as revocation of probation and parole. Both are post-criminal proceedings in which the defendant has no expectation of liberty prior to expiration of his maximum

---

[2]*See also Jones v. Cardwell*, 686 F.2d 754, 756 (9th Cir. 1982) (Fifth Amendment applies to a presentence interview with a probation officer); *Pens v. Bail*, 902 F.2d 1464 (9th Cir. 1990) (Fifth Amendment protection extends to an offender in Washington's Sexual Offender Program whose sentence was deferred and never imposed); *State v. Tinkham*, 74 Wn. App. 102, 109, 871 P.2d 1127 (1994) (Fifth Amendment applies during a court-ordered psychological examination for sentencing purposes).

term. Therefore, the same rules apply to setting the minimum term as to revocation hearings. There is no right to counsel, and a right to only minimal due process. *Whitesel*, 111 Wn.2d at 630. Accordingly, we hold that the Fifth Amendment privilege against self-incrimination does not apply to minimum term settings when the defendant has been sentenced by the court because the criminal proceeding has terminated. *See Murphy*, 465 U.S. at 434.

■ ■ Under the pre-SRA sentencing procedure, the facts the Board can consider in setting a minimum term are broader than those a judge sentencing under the SRA can consider. There is no real facts doctrine, RCW 9.94A.370(2), and the charging practices before and after the SRA was adopted were significantly different. Thus, the Board may consider uncharged crimes when setting the minimum term to avoid inequities in sentences between pre- and post-SRA inmates. *In re George*, 52 Wn. App. 135, 140, 758 P.2d 13 (1988).

In addition, the State argues that since King was warned his disclosures were not confidential, the Board may use them to set his minimum term without violating his right against self-incrimination. Volunteered statements are not barred by the Fifth Amendment. *Estelle*, 451 U.S. at 464. But King argues that he was not properly warned that his disclosures were not confidential.

The trial court found that King had been told that his disclosures during the Program would be revealed to the court, and substantial evidence supports this finding. During the intake interview, a court-ordered evaluation to determine whether King was in fact a sexual psychopath, he was advised that information gleaned from the interview would be made available to the court. The director of the Program testified that the policy of confidentiality meant that information disclosed in therapy would not go to third parties, but that it was "always an expectation that needed information would be provided to the court". Although other Program participants testified they understood all disclosures were completely confidential,

the trial judge was not convinced. The evidence was sufficient to persuade a fair-minded person that King was warned that his disclosures were not confidential.

In *Pens v. Bail, supra,* Pens was committed to the Western Program following convictions for two counts of first degree rape, but he was not sentenced before commitment as required by RCW 71.06.091. The therapists at Western assured Pens that his disclosures during treatment would not be released to the courts. As part of his treatment, Pens confessed to numerous rapes. This information was subsequently used as a basis for imposing an exceptional sentence. His sentence was reversed by the District Court for the Western District of Washington which held that using his confession to sentence him violated Pens' right to be free from compelled self-incrimination. The Ninth Circuit affirmed, holding that, "where 'the state's agent seeks from the convicted defendant a confession of additional criminal activity and that confession is used to enhance a defendant's sentence, we think it beyond peradventure that the defendant may properly claim the protection of the privilege against self-incrimination' ". *Pens,* 902 F.2d at 1465, quoting *Jones,* 686 F.2d at 756.

The trial court here distinguished *Pens* on the basis that, unlike Pens, King was never assured of confidentiality. While we have upheld the trial court's finding on that issue on the record before us, King asserts that new evidence would establish otherwise and urges us to consider this evidence on appeal. We need not do so, however, because there is an alternate legal basis on which to affirm the trial court in this case. *See Tropiano v. Tacoma,* 105 Wn.2d 873, 876-77, 718 P.2d 801 (1986) (trial court can be affirmed on any basis argued at trial and supported by the record). That is, unlike King, Pens had not been sentenced before commitment as required by the sexual psychopathy statute, RCW 71.06. As the Ninth Circuit observed, had Pens been given an "original sentence" as RCW 71.06.091 requires, information disclosed during his

postconviction treatment could have been used in post-sentencing proceedings to set his minimum term. *Pens*, 902 F.2d at 1465 n.1.

However, Pens was not given an original sentence before his statements were used to set his minimum term. Rather, the court deferred imposing any sentence to see if he could meet the conditions. RCW 9.94A.120(7)(a). If he had, no sentence would ever have been imposed, and he would have been released from custody. Since he failed to meet the conditions, the proceeding he faced when he returned to court was his original sentencing. The Fifth Amendment is clearly implicated in sentencing proceedings. *Post*, 118 Wn.2d at 604. The information obtained in the treatment program could not be used to decide his sentence in the first instance absent Pen's waiver of his right against self-incrimination.

King, on the other hand, received a sentence of 20 years on each count. Once imposed, that sentence was suspended on the condition that he successfully complete the treatment program at Western. The proceeding that King faced when he returned to court was revocation of his suspended sentence. Once the suspended sentence was revoked, the Board was required to impose a minimum term. Because the information disclosed in treatment was not used to impose King's original sentence, the Fifth Amendment protection against self-incrimination did not apply. He therefore cannot rely on *Pens* for the proposition that the Fifth Amendment privilege prevented the Board from using his disclosures in setting his minimum term.

## IV

### WAIVER

There is an additional ground on which we can affirm the trial court in this case because, even if the privilege against self-incrimination did apply to minimum term settings, King waived its protection by failing to invoke it.

The Fifth Amendment is not self-executing and

must be invoked by the defendant. *Post*, 118 Wn.2d at 605. In only two situations will the courts excuse a failure to invoke the privilege: (1) custodial interrogation by a state agent, *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), and (2) situations where the defendant is penalized for asserting it. *Murphy*, 465 U.S. at 429-30; *Post*, 118 Wn.2d at 605. King argues that both exceptions apply.

The *Miranda* exception requires an interrogation conducted by a state agent which must also be custodial. "Interrogation" requires some degree of compulsion. *State v. Warner*, 125 Wn.2d 876, 884, 889 P.2d 479 (1995). When the object of the interrogation is a person already incarcerated, "custodial" means more than just the normal restrictions on freedom incident to incarceration. *Warner*, 125 Wn.2d at 885. Psychological compulsion is not enough to establish "custody" for Miranda purposes. *Post*, 118 Wn.2d at 607.

The "penalty" exception is only available if (1) a person gives answers which would incriminate him or her in separate criminal proceedings, and (2) the State makes express or implied assertions that a penalty such as economic loss or deprivation of liberty will result from exercising the Fifth Amendment privilege. The rationale for this exception is that the State's threat forecloses a free choice to remain silent and compels incrimination. In this circumstance, incriminating statements are deemed compelled and therefore inadmissible in a criminal prosecution. *Post*, 118 Wn.2d at 609-10, *citing Murphy*, 465 U.S. at 434-35.

In *State v. Post, supra*, the defendant was convicted of first-degree rape and burglary and given an exceptional sentence in 1988. The court based its sentence in part on a 1980 interview with a psychologist when the defendant was on work release and being evaluated for parole and continued work release. The psychologist told the defendant the report was not confidential, but that his failure to cooperate could be a factor considered against him. The

Supreme Court held that neither exception to the waiver requirement applied. *Miranda* warnings were not required because the defendant was not "in custody", as his freedom of movement was not limited during the interview. Nor was there an "interrogation" because the interview was limited to prior crimes and no one foresaw that the examination would be used in a prosecution for later crimes. *Post*, 118 Wn.2d at 607. In the interview, Post responded to questions about criminal conduct for which he had already pleaded guilty or been convicted. He did not discuss undiscovered or uncharged crimes. At the time of the interview, Post had no criminal prosecution or appeal pending and he did not face a realistic threat of prosecution. Thus, the penalty exception did not apply. *Post*, 118 Wn.2d at 608-09.

Like Post, King was not "in custody" for *Miranda* purposes because no restraints were placed on him beyond those incident to the ordinary incarceration to which he was already subject. Furthermore, while the questions and his disclosures related in part to uncharged crimes, these were past acts for which there was little chance he would face new criminal liability. The testimony at the hearing indicated that his disclosures would not be the basis for new charges and, in fact, they were not. The penalty exception does not apply because King did not face a realistic threat of criminal prosecution for the earlier crimes at the time he admitted them. King's asserted psychological compulsion to admit to the uncharged crimes as part of his treatment is not sufficient to establish that the disclosures were involuntary or coerced. *See Warner*, 125 Wn.2d at 887. Thus, even if the privilege against self-incrimination applies to minimum term settings, King failed to invoke it and thus waived its protections.

## V
### INEFFECTIVE ASSISTANCE OF COUNSEL

King claims his trial counsel was ineffective because he

failed to raise or argue the issue of violation of psychologist/ patient privilege.

■ To establish ineffective assistance, the defendant must show both that counsel's performance was deficient and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 Wn.2d 816 (1987). The first prong requires "a showing that counsel's representation fell below an objective standard of reasonableness based on consideration of all the circumstances". *Thomas*, 109 Wn.2d at 226. The second requires a showing of a "reasonable probability" that counsel's deficient performance prejudiced the outcome. 109 Wn.2d at 226.

■ Confidential communications between a client and psychologist are privileged against compulsory disclosure. RCW 18.83.110. The privilege does not apply where the client does not intend the disclosure to be confidential. *In re Welfare of Henderson*, 29 Wn. App. 748, 752, 630 P.2d 944 (1981). A patient's intent that the communications be confidential must be reasonable in light of the circumstances surrounding the communication. *Post*, 118 Wn.2d at 612.

Here, the trial court found that King was warned that his disclosures in therapy could be released to the court. Substantial evidence supports that finding. Therefore, King's intent that his communications to the therapists be confidential was not reasonable. Counsel's failure to raise or argue that issue was not deficient because it is improbable that raising the issue would have been successful. It therefore would not have affected the outcome of the hearing. King did not receive ineffective assistance of counsel.

We affirm the trial court's decision in its entirety.

KENNEDY, A.C.J., and Cox, J., concur.

Review granted at 128 Wn.2d 1010 (1996).