[No. 40134-3-I.    Division One.    June 29, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. DARREL C. HOLM, *Appellant*.

---

430

431

*Christopher Gibson* of *Nielsen, Broman & Associates, P.L.L.C.,* for appellant.

*James H. Krider, Prosecuting Attorney,* and *Charles F. Blackman* and *Seth Aaron Fine, Deputies,* for respondent.

ELLINGTON, J. — Darrel C. Holm was convicted of first degree burglary and sentenced to 75 months in prison. He appeals his conviction on grounds that his original defense counsel failed to negotiate a plea to second degree burglary, which carried a standard range of one to three months. He also appeals the 60-month enhancement included in his sentence on grounds that Initiative 159, the "Hard Time for Armed Crime" Act, violates the "single subject" requirement in article II, section 19 of the Washington Constitution. We affirm both the conviction and the sentence.

## FACTS

The facts relating to the crime charged are not in dispute. Mr. Holm was apprehended while fleeing from the scene of a pawn shop burglary. Police searched Mr. Holm and found .357 caliber bullets in his pocket. Mr. Holm then confessed to taking a gun while in the pawn shop and indicated that he had discarded the weapon. The gun was not immediately recovered, and Mr. Holm was therefore charged with only second degree burglary. *See* RCW 9A.52.030(1) ("A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building other than a vehicle or a dwelling."); *compare* RCW 9A.52.020(1)(a) ("A person is guilty of burglary in the first degree if, with intent

to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime is armed with a deadly weapon.").

Mr. Holm was arraigned and released on $5,000 bail. His case was assigned to Michael Phillips, who was then with the Snohomish County Public Defender Association. Mr. Phillips first had contact with Mr. Holm[1] at the omnibus hearing held pursuant to CrR 4.5 on August 25, 1995. When Mr. Holm's case was called, he was not present and a bench warrant was issued. Mr. Holm eventually arrived, the bench warrant issued was quashed, and the matter was heard at the end of the calendar. Because the case potentially involved the "Hard Time for Armed Crime" Act, Mr. Phillips was reluctant to discuss the case with Mr. Holm in the courtroom or hallways, and therefore scheduled an appointment for Mr. Holm to come to his office. In setting up this meeting, Mr. Phillips told Mr. Holm that his case was complicated and involved a serious charge, but did not go into detail. Mr. Holm failed to keep the appointment. The meeting was rescheduled, and again Mr. Holm did not show. Mr. Holm called from California and asked to meet in the morning before the CrR 3.5/3.6 hearing set for September 7, 1995. Mr. Phillips informed Mr. Holm that his schedule did not permit such meeting.

Meanwhile, on August 17, 1995 (before the omnibus hearing), the State had mailed Mr. Phillips a written offer to accept a guilty plea on the charge of second degree burglary with a sentencing recommendation of one month on a standard range of one to three months. The plea offer stated that it would expire at the conclusion of the omnibus hearing or if the gun were recovered, whichever occurred first. Mr. Phillips did not receive this plea offer.

On August 29, 1995, the gun was recovered by police. The prosecuting attorney forwarded this information to

---

[1]Whether Mr. Phillips attempted to contact Mr. Holm before the omnibus hearing is unclear from the record.

Mr. Phillips on September 6, 1995. On September 7, 1995, the trial court held a hearing pursuant to CrR 3.5 and 3.6 concerning the admissibility of Mr. Holm's statements to police, as well as the recovered gun, which defense counsel suggested might be fruit of the poisonous tree. Mr. Holm was present at the hearing, but Mr. Phillips and Mr. Holm still had no conversation concerning the possibility Mr. Holm would be charged with first degree burglary or the ramifications of a guilty verdict on the higher offense.

Despite having had no opportunity to consult with his client, Mr. Phillips decided to proceed with the CrR 3.5/3.6 hearing because he "didn't see any real issues for the defense that would lead to a suppression" and because the witnesses were all present. The trial court concluded that Mr. Holm's statements to police and the gun were admissible. Mr. Holm does not assign error to the trial court's evidentiary rulings.

An amended information was filed on September 13, 1995, charging Mr. Holm with first degree burglary. Mr. Holm failed to appear for arraignment on the amended information and a bench warrant was issued. When Mr. Holm was taken into custody in November 1995, his case was reassigned, in anticipation of Mr. Phillips's resignation from the Public Defender's office. Mr. Phillips had no contact with Mr. Holm after the CrR 3.5/3.6 hearing.

Mr. Holm was subsequently found guilty of first degree burglary and sentenced to 75 months[2] in prison. Mr. Holm was represented at trial by Stephen J. Garvey, who substituted for the Public Defender as a result of a conflict of interest. In August 1996, Mr. Garvey, on behalf of Mr. Holm, moved for reinstatement of the written plea offer on grounds of ineffective assistance of counsel. The trial court conducted a multiday hearing on the motion, at which Mr. Phillips and the original deputy prosecutor, William Joice, testified.

---

[2]Mr. Holm had no prior offenses and his standard range was 15-20 months. His 75-month sentence included a 60-month firearm enhancement pursuant to RCW 9.94A.310(3)(a).

The trial court denied the motion, finding inter alia that: (i) Mr. Phillips never received the written plea offer; (ii) Mr. Phillips did not act unreasonably in refusing to talk to Mr. Holm at the omnibus or CrR 3.5/3.6 hearings but instead insisting that Mr. Holm come to his office; and (iii) Mr. Phillips had no obligation to press the prosecutor for a plea offer when, because he had not spoken to his client, he had no way of accepting it. Before issuing its final order, the trial court paused to consider whether Mr. Holm was prejudiced by Mr. Phillips's performance (even though it was not deficient). Over the State's protestations to the contrary,[3] the trial court concluded that, given the disparity between 1 month and 75 months in jail and Mr. Holm's slim chances for acquittal, Mr. Holm would likely have pleaded guilty to second degree burglary had such offer and the ramifications of not accepting it been conveyed to him. Mr. Holm appeals from the trial court's denial of his motion to reinstate the plea offer.

## Ineffective Assistance of Counsel

The test for ineffective assistance of counsel, other than in cases involving an actual conflict of interest, consists of two prongs: (i) whether defense counsel's performance fell below an objective standard of reasonableness; and (ii) whether this deficiency prejudiced the defendant. *E.g., Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. James*, 48 Wn. App. 353, 359, 739 P.2d 1161 (1987). With regard to the first prong, a strong presumption exists that defense counsel provided adequate assistance. *Id.* As to the second prong, the defendant must show a reasonable probability

---

[3]As the trial court was announcing its ruling, the State sought to offer the opinion of Michael Downes, the deputy prosecutor who tried the case against Mr. Holm, to the effect that Mr. Holm would not have accepted the plea offer of one month. Mr. Downes's belief was based on Mr. Holm's refusal to accept a subsequent plea offer of three years on second degree burglary with a weapon. *See* RCW 9.94A.310(3)(b) (three-year enhancement for Class B felonies). Mr. Garvey countered that Mr. Holm did not accept the later plea offer because a three-year sentence seemed to him as harsh as a six-year sentence. The trial court refused to consider Mr. Downes's assertions because they were not presented during the course of the hearing.

that, but for counsel's errors, the result of the proceeding would have been different. *Id.*

## Standard of Review

■■ We review a trial court's factual findings relating to an ineffective assistance of counsel claim under the substantial evidence standard. *See State v. King*, 78 Wn. App. 391, 404, 897 P.2d 380 (1995), *aff'd*, 130 Wn.2d 517, 925 P.2d 606 (1996). We review the trial court's legal conclusions de novo. *See State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995). A trial court's grant of relief is reviewed under an abuse of discretion standard. *See State v. Dawkins*, 71 Wn. App. 902, 907, 863 P.2d 124 (1993) (applying abuse of discretion standard in reviewing trial court's grant of a motion for new trial on ineffective assistance of counsel grounds).

## Plea Negotiations

Defense counsel has an ethical obligation to discuss plea negotiations with a client. *James*, 48 Wn. App. at 362. This duty includes not only communicating actual offers, but also keeping the defendant apprised of developments in plea discussions and providing sufficient information to enable the client to make an informed judgment whether or not to plead guilty. *Id.*; *see* AMERICAN BAR ASS'N, ABA STANDARDS FOR CRIMINAL JUSTICE, Standards 4-6.1 and 4-6.2 [hereinafter "ABA Standards"].

Here, the trial court found that defense counsel was not aware of the plea offer. This finding is supported by substantial evidence.[4] Thus, this case does not involve the failure to convey an actual offer, discuss ongoing plea negotiations, or provide sufficient guidance to the client. Rather,

---

[4]Mr. Phillips testified he had no recollection of receiving the offer at issue and Mr. Joice did not contradict his testimony. A copy of the offer was not in the public defender's file when it was reviewed later. In addition, Mr. Phillips's actions are consistent with a lack of knowledge: presumably, he would not have proceeded forward with the omnibus or CrR 3.5/3.6 hearings had he known about the plea offer.

the issue here is one of first impression, i.e., whether defense counsel has an affirmative duty to pursue a plea bargain. None of the cases cited by the parties addresses this particular question.[5]

We have found two published decisions from other jurisdictions analyzing the specific issue raised here: *People v. Brown*, 177 Cal. App. 3d 537, 223 Cal. Rptr. 66 (1986), *review denied* (May 29, 1986); and *Harris v. State*, 437 N.E.2d 44 (Ind. 1982). In *Brown*, the California Court of Appeals concluded:

> [T]he duty [of defense counsel] includes the obligation to initiate plea negotiations where the facts and circumstances of the offense and its proof, as well as an assessment of available factual and legal defenses, would lead a reasonably competent counsel to believe that there is a reasonable possibility of a result favorable to the accused through the process of plea negotiations. Where counsel has initiated plea negotiations, the duty requires that the negotiations be pursued to conclusion, whether or not a bargain is ultimately struck.

177 Cal. App. 3d at 549-50, 223 Cal. Rptr. at 74 (citation omitted). In *Harris*, the Supreme Court of Indiana rejected the argument that defense counsel has an "absolute duty" to attempt plea negotiations. 437 N.E.2d at 46. The *Harris*

---

[5]*See State v. James*, 48 Wn. App. 353, 739 P.2d 1161 (1987) (involving defense counsel's alleged failure to communicate a plea offer, but decided on grounds of actual conflict of interest); *Boria v. Keane*, 83 F.3d 48, *opinion superseded*, 99 F.3d 492, *decision clarified on reh'g*, 99 F.3d 36 (2d Cir. 1996), *cert. denied*, 521 U.S. 1118, 117 S. Ct. 2508, 138 L. Ed. 2d 1012 (1997) (involving defense counsel's failure to provide advice concerning the perils of rejecting a plea offer); *United States v. Blaylock*, 20 F.3d 1458 (9th Cir. 1994) (involving defense counsel's alleged failure to communicate a plea offer); *Mason v. Balcom*, 531 F.2d 717 (5th Cir. 1976) (involving the failure to negotiate a plea, but in addition to a host of other examples of deficient conduct); *United States v. Hoffman*, 926 F. Supp. 659 (W.D. Tenn. 1996), *aff'd*, 124 F.3d 200 (6th Cir. 1997), *cert. denied*, 522 U.S. 1063, 118 S. Ct. 725, 139 L. Ed. 2d 664 (1998) (rejecting the argument that defense counsel had a duty to pursue plea negotiations because the evidence established that the defendant was unwilling to plead guilty); *Pilchak v. Camper*, 741 F. Supp. 782 (W.D. Mo. 1990), *aff'd*, 935 F.2d 145 (8th Cir. 1991) (involving the failure to negotiate a plea, but in addition to 13 other "egregious errors"); *Cole v. Slayton*, 378 F. Supp. 364 (W.D. Va. 1974) (involving the failure to negotiate a plea, but in the context of defense counsel's complete abdication of responsibility to provide legal assistance).

court, however, appeared to adopt the standard expressed in the commentary to ABA Standard 4-6.1: "Plea discussions should be considered the norm and failure to seek such discussions an exception unless defense counsel concludes that sound reasons exist for not doing so." *See id.*

■ Like the *Harris* court, we do not adopt a per se rule requiring defense counsel to initiate plea bargaining in every case. We do not rule out the possibility that in some cases, failure to pursue plea discussions could constitute ineffective assistance of counsel. In such cases, however, we would not view the ABA Standards as controlling our analysis of ineffective assistance allegations in Washington (although the Standards might offer some guidance in certain circumstances). The proper question under *Strickland* is whether, in light of all of the circumstances, an attorney's conduct in not attempting to negotiate a plea falls below an objective standard of reasonableness.

This case presents a close question. We conclude that Mr. Phillips was not deficient in failing to initiate plea negotiations on behalf of Mr. Holm. Mr. Phillips apparently knew as early as the omnibus hearing that, in the event police found the gun, Mr. Holm could be charged with first degree burglary. The possible application of the "Hard Time for Armed Crime" Act was the very reason Mr. Phillips refused to discuss the case with Mr. Holm on the day of the omnibus hearing. By the time of the CrR 3.5/3.6 hearing, Mr. Phillips was aware that police had found the gun. Indeed, Mr. Phillips moved pursuant to CrR 3.6 to suppress the gun on the ground that it had been found as a result of Mr. Holm's allegedly inadmissible statements to police. Given the huge disparity between the possible sentences (1-3 months versus 75-80 months), Mr. Holm's apparent lack of defenses, and the potential bargaining power of an undecided motion to suppress the corpus delicti (i.e., the gun), we find troubling Mr. Phillips's continued failure to pursue plea negotiations.

We recognize, however, that on review, we have the bene-

fit of hindsight, as well as a view of the totality of events. When we examine the facts as they unraveled over the course of time, we cannot conclude that Mr. Phillips's performance fell below an objective standard of reasonableness. We agree with the trial court that, during his first contact with Mr. Holm, Mr. Phillips's reluctance to discuss the matter in the courtroom or hallways was not unreasonable. We believe that, at the omnibus hearing, Mr. Phillips took the steps necessary to provide adequate assistance: he scheduled a meeting in the privacy of his office and impressed upon Mr. Holm the importance of discussing the case in further detail. From that point forward, we are of the opinion that the result about which Mr. Holm complains was more a function of Mr. Holm's own dilatory actions than of any failings on Mr. Phillips's part.

At oral argument before this court, counsel for Mr. Holm asserted that the standard practice in Snohomish County is for the prosecutor to make a plea offer before the omnibus hearing, and if an offer is not made by that time, for defense counsel to inquire whether an offer is forthcoming. Were such assertion true, we might reach a different result; however, we find no evidence in the record to support a finding that Mr. Phillips's performance in this case did not comport with the standard practice in Snohomish County. The record merely indicates that plea offers generally expire at the omnibus hearing, but that such rule is, as the trial court put it, "observed as often in the breach." Mr. Joice's unsolicited testimony that he did not recall Mr. Phillips asking him for an offer at the omnibus hearing as "would typically happen if there was no offer communicated" does not, without more, establish a standard practice among defense counsel of soliciting plea offers.

In sum, we cannot condemn Mr. Phillips for believing that, due to circumstances beyond his control, he had insufficient information concerning the facts of the case to rea-

sonably recommend or pursue a guilty plea.[6] In reaching this conclusion, we do not take the position of the State and the trial court that a defense counsel's inability to consult with the client eradicates completely any obligation to initiate plea negotiations. We believe situations might arise in which defense counsel must engage in plea bargaining without first consulting with the client.[7] This case, however, does not present such situation because, but for Mr. Holm's failure to keep his appointments, defense counsel would have had ample opportunity to consult with his client and pursue appropriate discussions with the prosecuting attorney. We therefore affirm Mr. Holm's conviction for burglary in the first degree.

## "Hard Time for Armed Crime" Act

The issues presented by Mr. Holm in connection with his appeal from the 60-month firearm enhancement have been fully addressed in previous decisions. The Washington Constitution provides: "No bill shall embrace more than one subject, and that shall be expressed in the title." Wash. Const. art. II, § 19. In applying the single subject rule to Initiative 159, courts consider the legislative title, not the ballot title, because Initiative 159 was enacted by the Legislature. *State v. Broadaway*, 133 Wn.2d 118, 126, 942 P.2d 363 (1997). The legislative title of Initiative 159 is: "An Act Relating to increasing penalties for armed crimes[.]" *Id.* at 123. Initiative 159's title is restrictive and expressly limits the scope of the act to increasing penalties for armed crime. *Id.* at 127. In expanding the crime of first degree burglary to include entering or remaining in any building, not just a dwelling, *while armed*, Initiative 159

[6]*See* ABA Standard 4-6.1 ("Under no circumstances should defense counsel recommend to a defendant acceptance of a plea unless appropriate investigation and study of the case has been completed, including an analysis of controlling law and the evidence likely to be introduced at trial.").

[7]*See* Commentary to ABA Standard 4-6.1 ("The client's consent ordinarily need not be sought and obtained before any approaches are made, as there will be occasions when some discussion, perhaps only of a very tentative and preliminary nature, will occur before an opportunity arises to obtain the defendant's consent.").

does not go beyond the scope of its restrictive title. *State v. Burke*, 90 Wn. App. 378, 952 P.2d 619, 622 (1998); *see also State v. Davis*, 90 Wn. App. 378, 954 P.2d 325, 329 (1998) ("Because Davis was convicted of a crime in which he used a gun, the portion of the act the trial court applied falls directly within the legislative title."). Mr. Holm's 60-month firearm enhancement does not violate the Washington Constitution.

Affirmed.

BECKER and COX, JJ., concur.

After modification, further reconsideration denied July 22, 1998.

Review denied at 137 Wn.2d 1011 (1999).