Thomas Arthur JOHNSON, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 582S194.

Supreme Court of Indiana.

Oct. 1, 1982.

Estelle Powell, East Chicago, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The petitioner, Thomas Arthur Johnson, is before this Court appealing from the denial of his petition for Post-Conviction Relief, Rule 1. On June 8, 1979, petitioner was convicted by a jury of murder. Ind. Code § 35–42–1–1(1) (Burns 1979 Repl.).

Petitioner presents the following issue for our review: whether he was denied the effective assistance of counsel and due process of law when a decision to reject a proposed plea agreement was allegedly made by his father.

We recognize at the outset that at the post-conviction relief hearing, petitioner bore the burden of proving the grounds for his relief by a preponderance of the evidence. *Hall v. State,* (1980) Ind., 413 N.E.2d 262; *Baker v. State,* (1980) Ind., 403 N.E.2d 1069. In our review of the negative judgment entered against petitioner, we will not reverse that judgment unless the evidence is without conflict and leads unerringly to a conclusion contrary to that reached by the trial court. *Watkins v. State,* (1980) Ind., 410 N.E.2d 1198.

It is uncontradicted that prior to defendant's trial, the state tendered a plea bargain offer to petitioner's attorney. In exchange for the plea of guilt, the state offered to amend the information filed against petitioner from murder to voluntary manslaughter and to recommend that petitioner be sentenced to fifteen years' imprisonment.

Both in his petition for post-conviction relief and in his brief, petitioner has maintained that he was never informed of the plea bargain offer. The record, however, reveals conflicting evidence with respect to petitioner's factual contention.

The testimony of petitioner's counsel reveals that he believed that petitioner, a juvenile, was incompetent to stand trial and incapable of rendering a decision on his own behalf at the time the plea was rejected. His belief was based not only on his own conversations with petitioner in jail, but also from his discussions with doctors who

had examined petitioner. For that reason, petitioner's counsel did rely on petitioner's father and his own legal expertise and intuition to determine whether the plea should be accepted or rejected, as the record reveals:

Q. "Would you say that you would rely basically on, Tommy being sixteen (16), his parents to make major decisions concerning the trial of this case?"

A. "Well, it is kind of hard to say. This was a unique situation. The feeling of the family at the time was some hostility, especially the father. The mother was very very upset about the whole situation. So upset to the extent that I could not use her as a witness for Tommy. The father had some hostility with the system. He felt that he had forgiven his son and that it was not a necessity to proceed with a trial in this cause. Tommy was in a confused state of mind. I filed an incompetency because of that. I also filed, after talking to the doctors and determination of most of the doctors was that he was in such a fear at the time, I decided to continue with a part of that defense to show his state of mind. There was a recommendation by the State of Indiana for a plea. It was an offer of voluntary manslaughter, fifteen (15) years. My personal opinion at the time was that that was not any kind of a deal. It was not a sufficient offer. I communicated this with Mr. Johnson, and Mr. Johnson was even more hostile about it."

Q. "Talking about Tommy's father?"

A. "Tommy's father. He said no way and advised him, *discussed it with Tommy,* and he was very adamant about the deal. *I did go over to talk to Tommy because I felt that he should at least know what is going on. When I went to talk to him about it at the time, I did not really think he understood or knew what the ramifications were.* Basically, I

advised him to a certain extent not to even consider it because I did not feel myself personally that it was a sufficient plea with fifteen (15) years as a recommendation." [Emphasis added.]

Q. "Would you say that you based your decision on whether to accept or not accept the plea offer through your conversations with Tommy's parents and through—"

A. "The determination I think was part of two (2) things. The main determination was his father's adamancy about the plea. I think his father did talk to Tommy, but his conversation was basically more so of going through with the trial. Tommy really did not say too much one way or the other. I do not recall."

\* \* \* \* \* \*

Q. "Did you allow Tommy to make the decision as to whether he would accept the plea or not?"

A. "No."

Q. "His father advised you that he did not want to accept the plea?"

A. "That is right."

Q. "And you, in reviewing the case, did not think it was an acceptable plea? Is that right?"

A. "It was more so I knew the father did not want it, and in good conscious, I think it was part of two (2) things. I think I made a decision."

Q. "Would you say you would not allow or did not feel you should allow Tommy to make a decision on the plea based upon his age, coupled with the fact that he was very upset and crying and—"

A. "I do not think he could have made the decision."

As the emphasized portions of the transcript reveal, petitioner's counsel testified that both he and the petitioner's father discussed the plea offer with petitioner. On cross-examination, the attorney was asked to reaffirm his statement that he had conferred with petitioner regarding the offer:

Q. "Do you know whether or not Tommy was informed as to the offer, itself, by his father?"

A. "I told him about it myself."

Q. "You told Tommy about the offer?"

A. "Yes."

Q. "So that the allegation and post-conviction remedy that Tom did not know about the offer was false."

A. "I would not characterize it as that. I do not think he understood or due to his state of mind at the time, he may not have remembered that I talked to him about it."

Q. "Let me read from the post-conviction remedy that suggests, number six (6) suggests, and I quote that paragraph. Six (6) of the P.C.R. Petition. 'That the defendant's trial counsel, Hamilton Carmouche, failed to discuss said plea offer with the defendant himself presumably due to the defendant's tender years.' That is not correct? You did discuss it with him and tell him about it?"

A. "Yes."

■ Petitioner's contention that he was never informed of the plea bargain offer is consequently without merit. Nor do we believe that the manner in which petitioner's counsel approached the plea bargain offer resulted in a deprivation of the constitutional right to the effective assistance of counsel. U.S.Const. amend. VI; Ind.Const. art. 1, § 13. The state correctly asserts that to result in a denial of the right, the representation provided must have constituted a "mockery of justice," as modified by the requirement of "adequate legal representation." *Tessely v. State,* (1982) Ind., 432 N.E.2d 1374; *Cottingham v. State,* (1978) 269 Ind. 261, 379 N.E.2d 984. In implementing the standard, this Court will not second-guess the strategy of counsel. *Tessely v. State, supra; Hollon v. State,* (1980) Ind., 398 N.E.2d 1273.

To find that the counsel provided petitioner was inadequate would require this Court to indulge in second-guessing. As the record heretofore quoted reveals, counsel for petitioner did not believe the petitioner was in full control of his mental faculties. His belief was predicated on his observations of and conservations with petitioner, as well as his conversations with doctors who had examined him. Petitioner himself conceded that he "was very confused" at the time the plea agreement was offered, although in retrospect, he considered himself capable of making the decision of whether to accept the proposal.

Counsel for petitioner, however, was required to assess the circumstances as existing at the time the plea agreement was offered. Based on his consultations with medical experts, his own observations of petitioner, and the concededly "confused" state of petitioner's mind, counsel opted to rely on his own assessment of the merits of the proposal, which he considered dubious, and the opinion of petitioner's father. Consistent with his assessment of petitioner's mental state as "confused," the record reveals he filed pleas of insanity and incompetency to stand trial. In short, petitioner's counsel was faced with a difficult and delicate situation, assessed both the petitioner's mental condition and the merits of the state's proposal, and, based on his legal expertise and experience, opted for an approach and strategy which he deemed appropriate to the circumstances. It is not our prerogative to second-guess these decisions; in fact, the record reflects that counsel approached his task with discernment, including his efforts to insure that petitioner was in fact informed of the proposed agreement. The representation provided petitioner did not deprive him of his constitutional right to the effective assistance of counsel. *Tessely v. State, supra; Hollon v. State, supra.*

■ Petitioner has also argued he was denied due process of law because the record does not unequivocally reveal that his father had his best interests in mind when he consulted with counsel about the proposed plea agreement. His contention stems from the fact that petitioner was charged with killing his brother.

Petitioner points to the fact that at the post-conviction hearing, his counsel alluded to the father's "hostility." That "hostility," however, was directed toward "the system," as the record reveals. Counsel for petitioner testified: "The father had some hostility with the system. He felt that he had forgiven his son and that it was not necessary to proceed with a trial in this cause." There is no other evidence bearing on the father's mental state; the father did not testify at the post-conviction hearing.

 Petitioner has not sustained his burden to establish the factual basis for his claim; his argument that his father held interests adverse to his own rests on speculation. Nor did the matter of whether to accept or reject the plea agreement constitute a fundamental right which in and of itself would elevate his contention to one of due process status. *Compare,* Ind.Code § 31–6–7–3 (Burns 1980 Supp.); *Taylor v. State,* (1982) Ind., 438 N.E.2d 275. Our conclusion that petitioner's contention must be rejected is buttressed by the fact that the tendered plea agreement was viewed with disfavor by petitioner's attorney.

For all the foregoing reasons, there was no trial court error and its judgment should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.