**Maurice DEW, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

**No. 49A02–0508–PC–800.**

Court of Appeals of Indiana.

March 10, 2006.

Transfer Denied May 25, 2006.

---

Hilary Bowe Ricks, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Maurice Dew appeals the denial of his petition for post-conviction relief. We reverse and remand.

### Issue

The dispositive issue is whether the failure of Dew's attorney to inform him about a plea offer from the State constitutes ineffective assistance of counsel.

### Facts and Procedural History

We excerpt the following facts from Dew's direct appeal:

On September 1, 2001, twenty-year-old T.C. came home from college for the weekend. She was watching television during the early morning hours, and her stepfather, Dew, returned home and told T.C. that he was "so drunk." Dew sat next to T.C. and tried to place his head on her lap. T.C. told him to go to bed. Dew went into his bedroom and returned wearing only a robe. Dew again tried to place his head on T.C.'s lap, but she refused. T.C. turned off the television and told Dew that she was going to read her Bible and go to bed. When Dew followed T.C. into her bedroom and tried to talk to her, T.C. took his arm, walked him to his bedroom, and told him to go to sleep. Dew then grabbed T.C.'s arm, pulled her into the bedroom, and put her on the bed. Dew then lay on top of T.C. and hugged her. After hugging him back, T.C. told Dew to get off of her, but Dew tried to pull T.C.'s leg up and "cuff it under his arm." Dew told T.C., "I'm tired of waiting." While trying to "put [her] leg up," Dew inserted his fingers into T.C.'s vagina. T.C. kept saying, "Please don't do this." When T.C. resisted, Dew placed his hands on her neck and started to choke her. Dew told T.C. that he would "choke the [shit] out of [her]." Dew then held T.C.'s hands above her head, moved the crotch of T.C.'s pajama shorts aside, and inserted his penis into her vagina. T.C. was a virgin and "felt like [she] was getting ripped from the inside out."

The next day, T.C. told a friend and the friend's mother about the incident, and they took her to Wishard Hospital. Dr. Adrienne Rasbach found that T.C.'s hymen was torn and that T.C. had redness and irritation between the vaginal opening and the rectum. Dew's seminal material or spermatozoa were identified on the vaginal and cervical slides and swabs, the external genital swab, and the vaginal wash. As a result of the incident, T.C. became pregnant and had a child who was born on May 21, 2002.

*Dew v. State*, 802 N.E.2d 60, 49A02-0303-CR-265, slip op. at 2-3 (Ind.Ct.App. Dec.29, 2003) (citations to transcript omitted), *trans. denied* (2004).

On September 21, 2001, the State charged Dew with class B felony rape and class B felony criminal deviate conduct. A jury trial commenced on October 28, 2002. During trial, Dew expressed an interest in pleading guilty. The prosecutor offered to dismiss the criminal deviate conduct charge in exchange for a guilty plea on the rape charge, with a cap of six years on the

executed portion of the sentence.[1] Dew rejected the offer, and the trial ended in a hung jury.[2]

A second trial was set for January 30, 2003. Dew's counsel did not meet with his client during the interim. On December 27, 2002, the State filed a supplemental notice of discovery compliance stating that it intended to call eight additional witnesses at trial. Dew's counsel did not interview those witnesses and did not tell Dew about them. On January 27, 2003, the prosecutor faxed a plea offer to Dew's counsel. The draft plea agreement states that in exchange for dismissal of the criminal deviate conduct charge, Dew would plead guilty to the rape charge and receive "a cap of six (6) years on the original executed portion of the sentence, any probation time will be left to the Court's discretion[.]" Petitioner's Ex. E at 2. The first page of the fax reads in relevant part: "[M]y trial today was cont'd, so I'm looking at a plea on Dew—I can agree to give him the minimum on the 1 FB—leave it open—or amount of probation open—whatever—tell me what you think he'll take.... Let me know ASAP—we're first choice on Thursday." *Id.* at 1. Dew's counsel did not tell Dew about the plea offer.

At trial, Dew testified that his encounter with T.C. was consensual and that the use of his left arm was limited due to a gunshot injury. Five of the State's additional witnesses appeared at trial; at least three

testified to T.C.'s subdued demeanor after the incident,[3] and one testified that Dew was able to play basketball before the incident. The jury found Dew guilty as charged. On February 28, 2003, the trial court sentenced Dew to concurrent twenty-year terms. Dew appealed his convictions and sentence. On December 29, 2003, another panel of this Court affirmed the trial court in all respects. *See Dew*, slip op. at 13.

On August 24, 2004, Dew filed a petition for post-conviction relief alleging ineffective assistance of trial counsel on several grounds, including counsel's failure to interview the State's additional witnesses and to advise him of the State's plea offer prior to the second trial. On May 18, 2005, the post-conviction court denied Dew's petition. The court's order contains the following conclusions:

> 2. As his sole issue for Post–Conviction Relief, Defendant asserts he was a victim of ineffective assistance of trial counsel. The Record does not support that assertion. Defendant's arguments boil down to two simple assertions—that trial counsel should have followed the same strategy used in the first trial or that he should have done more to encourage defendant to accept the State's plea offer. The self-serving claims presented at the evidentiary hearing do not support the conclusion that trial counsel's performance was deficient or that counsel's performance prejudiced the

---

1. A written plea offer does not appear in the record. At the post-conviction hearing, both Dew's counsel and the prosecutor stated that this plea offer had the same terms as that made before the second trial. PCR Tr. at 5, 35–36.

2. During deliberations, the jury indicated that it was unable to reach a decision. The trial court asked the jury to continue to deliberate. Within an hour, the jury indicated that the "count [was] 7 to 5 and [had] not changed in

several hours." Tr. at 21. It is unknown whether the majority voted for conviction or acquittal.

3. Dew states that Candida Smith, Ben Porter, and Jerry White testified to T.C.'s "demeanor and mood in the days after the alleged incident to rebut the defense position that the intercourse was consensual." Appellant's Br. at 13. Our review of the record indicates that Melony Jackson also testified to this effect. *See* Tr. at 79–81.

defense. Defendant merely demonstrates that the trial strategy from his second trial was less successful than the strategy from the f[i]rst setting, but the fact the outcome differed does not establish that counsel erred—the first trial did not result in an acquittal so counsel tried a different approach which failed. This alone does not support Defendant's claims.

. . . .

4. Defendant argues that counsel was ineffective for failing to interview witnesses added prior to the second trial. [Counsel] testified that the witnesses were "demeanor" witnesses, [i.e.,] witnesses who would testify as to the victim's demeanor **after** the assault, who[m] he deemed to be of little significance. The witnesses' testimony was what counsel anticipated and Defendant fails to demonstrate any prejudice arising from [counsel's] decision.

5. Defendant also complains that [counsel] did not visit him in jail between the two trials. However, Defendant fails to advise the Court, either in his argument[,] in his written Petition[,] or in the evidence produced at the evidentiary hearing, what prejudice resulted from this. As such, the allegation does not justify relief.

6. Defendant additionally complains that counsel failed to discuss the State's plea offer with him in light of the new witnesses added by the State. As noted above, however, the new witnesses' testimony was of only marginal effect and both [counsel] and Deputy Prosecutor Kramer testified that there was no new offer. Defendant had previously rejected the State's original offer and the deci[s]ion to [forgo] fruitless negotia-

tions does not rise to the level of ineffective assistance.

PCR App. at 31. Dew now appeals.

## Discussion and Decision

▬▬ Dew asserts that the post-conviction court improperly denied his petition for relief. We apply the following standard:

> The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made. In this review, findings of fact are accepted unless clearly erroneous, but no deference is accorded conclusions of law.

*Hoaks v. State*, 832 N.E.2d 1061, 1063 (Ind.Ct.App.2005) (some citations omitted), *trans. denied.* "Because the post-conviction court is the sole judge of the evidence and the credibility of witnesses, it is not our function to reweigh the evidence or judge the credibility of the witnesses." *Jarrett v. State*, 580 N.E.2d 245, 248 (Ind. Ct.App.1991), *trans. denied* (1992).

Dew asserts that counsel's failure to inform him of the State's plea offer prior to the second trial deprived him of the right to effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution.[4] In *Strickland v.*

4. *See* U.S. CONST., amend. VI ("In all crimi-  nal prosecutions, the accused shall enjoy the

*Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the U.S. Supreme Court stated that

> "the right to counsel is the right to the effective assistance of counsel." Government violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense. Counsel, however, can also deprive a defendant of the right to effective assistance, simply by failing to render "adequate legal assistance."

*Id.* at 686, 104 S.Ct. 2052 (citations omitted).

Prior to *Strickland,* however, the U.S. Supreme Court "had not elaborated on the meaning of the constitutional requirement of effective assistance in the latter class of cases—that is, those presenting claims of 'actual ineffectiveness.'" *Id.* Six years before *Strickland,* this Court addressed such a claim involving trial counsel's failure to communicate a plea offer to his client. *See Lyles v. State,* 178 Ind.App. 398, 382 N.E.2d 991 (1978). The State charged Lyles with robbery. Before trial, the prosecutor made a tentative plea offer of which Lyles had knowledge. On the day of trial, the prosecutor told Lyles's counsel that if his client would plead guilty to theft, then the State would recommend a sentence of one to five years. Instead of communicating the offer to his client, counsel informed Lyles that the plea bargain had fallen through. Counsel then told the prosecutor and the trial court that Lyles would not accept the offer. Lyles was tried, convicted as charged, and sentenced to ten years' imprisonment. Lyles filed a belated motion to correct error alleging ineffective assistance of counsel, which the trial court denied.

On appeal, we analyzed Lyles's ineffectiveness claim under the standard previously enunciated by the Indiana Supreme Court:

> It is the duty of counsel, whether appointed or retained, to afford his client full and adequate representation and consultation, which includes a complete explanation of the constitutional rights of the defendant, the existence of defense, and the consequences of any pleas. Only then can a defendant intelligently and voluntarily make those decisions that are his, and his alone to make. These decisions, personal to the defendant, include waivers of constitutionally protected rights such as the right to trial by jury, right to confront one's accusers and the privilege against compulsory self incrimination. Another such decision that is a defendant's alone to make is the one Lyles was not permitted to make by the conduct of his counsel. As our Supreme Court stated: "An *accused* has the right to elect as to whether he will stand trial or plead guilty." *Abraham v. State,* (1950) 228 Ind. 179, 185, 91 N.E.2d 358, 360. (emphasis added). *A fortiori* such election may not be intelligently or voluntarily made without consultation; and certainly not without communication.

> . . . .

> Incompetency of counsel revolves around the particular facts of each case. On appeal, the presumption that counsel was competent can be overcome only by strong and convincing evidence. The standard for determining whether the

right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and

cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.").

defendant has been denied competent counsel is whether the trial resulted in a "mockery of justice" because of the failure of the attorney to provide the defendant with adequate legal representation. *Cottingham v. State*, (1978) Ind., 269 Ind. 261, 379 N.E.2d 984, 986.

In the case at bar, the defense counsel's failure to communicate the State's plea offer short-circuited the entire guilty plea process. This was not a matter of trial tactics or strategy, which do not automatically constitute incompetence. This case involved a decision of the utmost importance: whether or not to plead guilty. In matters of such importance, the attorney has no option, he must advise his client of the proposed plea agreement. Here, this duty to advise was clearly and flagrantly breached. That Lyles was prejudiced is evident: he was sentenced to ten years, when he had an opportunity to plead to an offense with a recommendation of a one to five years sentence.

Since Lyles was denied the effective assistance of counsel at a critical stage of the proceedings, we are constrained to reverse the judgment of the trial court and remand with instructions to conduct a guilty plea hearing, assuming, as equity indicates under the limited facts of this case, the State's offer continues. However, should the State withdraw its offer to permit Lyles to plead guilty to the crime of theft, or should the trial court, in its informed discretion, refuse to accept the guilty plea, if offered, Lyles is to be granted a new trial. *Id.* at 400–02, 382 N.E.2d at 993–94 (footnote and some citations omitted).

In 1980, the Indiana Supreme Court adopted our holding in *Lyles. See Curl v. State*, 272 Ind. 605, 607–08, 400 N.E.2d 775, 777 (1980) ("If defense counsel failed to inform defendant of a plea offer, we would be compelled to reverse. However, defendant concedes that this offer was communicated to her.") (citing *Lyles* ); *see also Harris v. State*, 437 N.E.2d 44, 45 (Ind.1982) (acknowledging *Curl*'s adoption of *Lyles*'s holding and reaffirming same, while upholding post-conviction court's determination that plea discussions were nonbinding and therefore not required to be communicated to appellant).

In May 1984, the U.S. Supreme Court in *Strickland* formulated the following two-prong standard for determining whether counsel's assistance was so defective as to require reversal of a death sentence or a conviction following trial:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

With respect to the deficient performance prong, the *Strickland* court explained that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688, 104 S.Ct. 2052. The court went on to say:

Representation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of

interest. *From counsel's function as an assistant to the defendant derive the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of a prosecution.* Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process.

These basic duties neither exhaustively define the obligations of counsel nor form a checklist for judicial evaluation of attorney performance. In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in American Bar Association standards and the like ... are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel of the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. Indeed, the existence of detailed guidelines for representation could distract counsel from the overriding mission of vigorous advocacy of the defendant's cause. Moreover, the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial.

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." ....

. . . .

[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the

same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 688–90, 104 S.Ct. 2052 (emphasis added) (citations omitted).

Regarding the prejudice prong, the court stated:

An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

. . . .

It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding. . . .

. . . .

. . . . The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 691–94, 104 S.Ct. 2052 (citations omitted).

In November 1985, the U.S. Supreme Court held that the *Strickland* standard applies to ineffectiveness claims arising out of the guilty plea process. *See Hill v. Lockhart,* 474 U.S. 52, 57–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Even after *Strickland* and *Hill,* however, the Indiana Supreme Court consistently reiterated our holding in *Lyles* when confronted with the issue of whether failure to inform a defendant of a plea offer constitutes ineffective assistance of counsel. *See Young v. State,* 470 N.E.2d 70, 71 (Ind.1984) ("We agree with the Petitioner that if his attorney failed to advise him of a plea offer made by the State, he was denied the effective assistance of counsel.") (citing, *inter alia, Lyles, Curl,* and *Harris* ); *Gibbs v. State,* 483 N.E.2d 1365, 1366 (Ind.1985) ("It is a denial of effective assistance of counsel if in fact there is a failure to convey a plea offer from the State.") (citing, *inter alia, Young* ); *Whittle v. State,* 542 N.E.2d 981, 989 (Ind.1989) ("Failure to convey a plea offer from the prosecutor to the defendant constitutes a denial of effective assistance of counsel.") (citing *Gibbs* and *Young* ), *overruled on other grounds by Scisney v. State,* 701 N.E.2d 847 (Ind.1998); *Gray v. State,* 579 N.E.2d 605, 607–08 ("It is indeed a denial of effective assistance of counsel if in fact there is a failure to convey a plea offer from the State.") (citing *Young* ). In all of these cases, however, the court determined either that no plea offer was made or that the offer was in fact communicated to the defendant.

Dew relies on *Lyles* in asserting that his counsel rendered ineffective assistance by failing to inform him of the State's plea offer. In light of *Strickland* and *Hill,* however, we believe that we must reconcile *Lyles* 's per se rule of ineffectiveness with the U.S. Supreme Court's two-part *Strickland* analysis. *See Stevens v. State,* 701

N.E.2d 277, 281–82 (Ind.Ct.App.1998);[5] *see also Group Dekko Servs. LLC v. Miller,* 717 N.E.2d 967, 969 (Ind.Ct.App.1999) ("U.S. Supreme Court decisions regarding federal questions ... are binding on state court[s], while the decisions of lower federal courts are available for their consideration as persuasive authority.").

In so doing, we find persuasive the Seventh Circuit's resolution of a similar issue in *Johnson v. Duckworth,* 793 F.2d 898 (7th Cir.1986), *cert. denied.* The seventeen-year-old Johnson was charged with murdering his brother. The prosecutor offered to reduce the charge to voluntary manslaughter with a recommended fifteen-year sentence in exchange for a guilty plea. Counsel shared the plea offer with Johnson and his parents and ultimately rejected the offer without receiving a definitive response from his mentally unstable client. Johnson was tried as an adult, convicted, and sentenced to thirty years. In a habeas petition filed in federal court, Johnson alleged "that he was denied effective assistance of counsel when his attorney did not allow him the opportunity to make a final decision regarding the plea agreement." *Id.* at 899 (footnote omitted). The court recited the *Strickland* standard and framed the issue as whether Johnson's counsel acted unreasonably in defending his client and, if so, whether those actions were sufficiently prejudicial to warrant habeas relief. *Id.* at 900.

The court then stated:

It is undisputed that a defendant has a constitutional right to participate in the making of certain decisions which are fundamental to his defense. *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Included among these fundamental choices are the decisions to forgo the assistance of counsel, *Faretta v. California,* 422 U.S. 806, 834, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and to waive trial by jury, *Adams v. United States ex rel. McCann,* 317 U.S. 269, 275, 63 S.Ct. 236, 87 L.Ed. 268 (1942). Similarly, the decision to plead guilty is one that must be made by the defendant, and is not one in which an attorney may speak for his client without consultation. *Boykin v. Alabama,* 395 U.S. 238, 242–44, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Brookhart v. Janis,* 384 U.S. 1, 7, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966). Johnson argues here that the decision to reject or accept a plea is likewise a fundamental decision which an attorney cannot make for his client without giving rise to a claim of ineffective assistance.

Johnson correctly points out that neither the Supreme Court nor this court have yet decided whether an attorney, without consulting with his client, may constitutionally decide not to accept a proffered plea agreement. Johnson argues that the decision to reject a plea

---

5. In *Stevens,* another panel of this Court addressed the issue at bar following the denial of a motion to correct error. The court recited the *Strickland* standard and noted that "a demonstration of ineffective assistance of counsel requires an inquiry into factual issues, one not well-suited to a motion to correct errors." *Stevens,* 701 N.E.2d at 281. The court observed that "[a] long line of cases holds that failure to communicate a plea offer to a defendant constitutes ineffective assistance of counsel" but that "there remain[ed] questions of whether counsel in fact failed to communicate the State's first plea offer, and, if so, whether Stevens was in fact prejudiced by such failure, as the *Strickland* test requires, where she later appeared willing to reject an even more generous plea offer from the State." *Id.* at 281–82. Ultimately, the court upheld the denial of Stevens's motion to correct error and left open the possibility that she could raise the issue in a petition for postconviction relief. *Id.* at 282. In sum, the *Stevens* court recognized that the *Strickland* standard applies to the claim Dew raises in this appeal.

agreement is merely the flip side of the decision to plead guilty and that, *a fortiori*, a defendant's rights are violated when his attorney unilaterally rejects the agreement. The issue is not quite as simple as Johnson would have us believe, however. There is a vast difference between what happens to a defendant when he pleads guilty as opposed to what occurs when a plea agreement is rejected. The rejection of a plea agreement, in most instances, will result in the defendant going to trial with all of the concomitant constitutional safeguards that are part and parcel of our judicial process. The defendant who pleads guilty, on the other hand, waives many of these protections, including, for example, the right to trial by jury, *Boykin*, 395 U.S. at 243, 89 S.Ct. 1709, and the right to object to allegedly unconstitutional searches and seizures, *Stevenson v. Mathews*, 529 F.2d 61, 63 (7th Cir.), *cert. denied*, 426 U.S. 954, 96 S.Ct. 3181, 49 L.Ed.2d 1193 (1976). *See Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). Contrary to Johnson's contentions, there is a significant difference between the consequences emanating from a decision to reject a plea agreement and not plead guilty and the decision to enter a guilty plea. *See Boykin*, 395 U.S. at 242, 89 S.Ct. 1709 (noting that in essence a plea of guilty is a conviction; "nothing remains but to give judgment and determine punishment").[6] We therefore reject Johnson's argument that the Supreme Court's decisions in *Boykin* and *Brookhart*, which set out a defendant's right to make the final decision regarding a plea of guilty, are necessarily controlling in the present case.

Our own analysis cannot end here, however. Simply because the decision to plead guilty and the decision to reject a plea agreement are fundamentally different, does not mean that an attorney is barred from unilaterally making the decision in the former and allowed a free rein to choose in the latter. Indeed, the courts that have considered the plea agreement issue have generally concluded that the defendant has a right to be informed about the plea agreement as part of his participation in the decision-making process surrounding his defense. *E.g., United States ex rel. Caruso v. Zelinsky*, 689 F.2d 435, 438 (3d Cir. 1982); *Harris v. State*, 437 N.E.2d 44, 45–46 (Ind.1982); *Lyles v. State*, 178 Ind.App. 398, 382 N.E.2d 991, 993 (1978) (attorney's failure to communicate plea offer violates defendant's rights); *State*

---

**6.** *See also Florida v. Nixon*, 543 U.S. 175, 187, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004) ("[C]ertain decisions regarding the exercise or waiver of basic trial rights are of such moment that they cannot be made for the defendant by a surrogate. A defendant, this Court affirmed, has 'the ultimate authority' to determine 'whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal.' *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (Burger, C.J., concurring). Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action. A guilty plea, we recognized in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), is an event of signal significance in a criminal proceeding. By entering a guilty plea, a defendant waives constitutional rights that inhere in a criminal trial, including the right to trial by jury, the protection against self-incrimination, and the right to confront one's accusers. *Id.* at 243, 89 S.Ct. 1709. While a guilty plea may be tactically advantageous for the defendant, *id.* at 240, 89 S.Ct. 1709, the plea is not simply a strategic choice; it is 'itself a conviction,' *id.*, at 242, 89 S.Ct. 1709, and the high stakes for the defendant require 'the utmost solicitude,' *id.*, at 243, 89 S.Ct. 1709.") (parallel citations omitted).

v. *Simmons*, 65 N.C.App. 294, 309 S.E.2d 493, 497 (1983) (failure to inform client of proffered plea agreement constituted ineffective assistance of counsel in the absence of extenuating circumstances).[7] *See People v. Whitfield*, 40 Ill.2d 308, 239 N.E.2d 850 (1968). In *United States ex rel. Caruso v. Zelinsky*, for example, the Third Circuit affirmed the district court's conclusion that an attorney's "failure to communicate a plea bargain offer would deny [the defendant] his sixth and fourteenth amendment rights," noting that "[i]t would seem that, in the ordinary case, a failure of counsel to advise his client of a plea bargain would constitute a gross deviation from accepted professional standards." 689 F.2d at 438.

The Code of Professional Responsibility and the American Bar Association Standards for Criminal Justice likewise indicate that a defendant should be informed about and participate in the plea bargaining process. For example, ABA Standard 4–6.2(a) provides:

> In conducting discussions with the prosecutor the lawyer should keep the accused advised of developments at all times and all proposals made by the prosecutor should be communicated promptly to the accused.

I American Bar Association Standards for Criminal Justice Standard 4–6.2(a) (2d ed.1980 and 1986 Supp.). *See also* ABA Code of Professional Responsibility, EC 7–7; ABA Standard 4–5.2. These standards of conduct are relevant to a court in resolving claims alleging ineffective assistance of counsel. As noted above, the Supreme Court in *Strickland* declined to outline standards of constitutionally minimal professional competence, noting that the sixth amendment ultimately relies "on the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions." 466 U.S. at 688, 104 S.Ct. 2052. More specifically, the Court noted that, in dealing with claims of ineffective assistance, "[p]revailing norms of practice as reflected in American Bar Association standards and the like ... are guides to determining what is reasonable, but they are only guides." *Id.* Accord *Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 994, 89 L.Ed.2d 123 (1986).

> *After examining the cases and professional standards, we fully agree with Johnson that in the ordinary case criminal defense attorneys have a duty to inform their clients of plea agreements proffered by the prosecution, and that failure to do so constitutes ineffective assistance of counsel under the sixth and fourteenth amendments. Apart from merely being informed about the proffered agreement, we also believe that a defendant must be involved in the decision-making process regarding the agreement's ultimate acceptance or rejection.*

*Id.* at 900–02 (emphasis and footnote added) (some parallel citations omitted).

---

7. In a footnote, the *Johnson* court remarked, "It is interesting to note that in denying Johnson post-conviction relief as a result of [his counsel's] actions, the Indiana Supreme Court did not cite either its decision in *Harris* or the appellate court's decision in *Lyles*. *Johnson v. State*, 440 N.E.2d 459 (1982). Nonetheless, Johnson now contends that both *Harris* and *Lyles* directly support his claim for relief in this court." *Johnson*, 793 F.2d at 901 n. 2. We note that such a citation would have been obiter dictum, inasmuch as the Indiana Supreme Court determined that Johnson's "contention that he was never informed of the plea bargain offer is ... without merit." *Johnson*, 440 N.E.2d at 462.

The court quickly pointed out, however, that Johnson's case was not "typical." *Id.* at 902. Johnson was admittedly confused and considered himself incompetent when the plea offer was made. Johnson's counsel "informed his client of the plea agreement that was offered by the prosecution, discussed the agreement with his teenage client, and made the decision to reject what he believed was an unwise agreement in conjunction with his client's parents." *Id.* at 902. Under these "unique circumstances[,]" the court concluded that counsel "acted reasonably and that Johnson's right to effective assistance of counsel was not compromised." *Id.*[8] In a footnote, the court stated that although it did not need to reach the prejudice prong of the *Strickland* test, it had "serious doubt whether Johnson [had] shown the necessary prejudice to justify habeas relief." *Id.* at n. 3. The court further stated,

> In his brief, Johnson argues that but for [counsel's] actions he "would have been *able* to tender to the state trial court a plea of guilty to voluntary manslaughter." (emphasis added). Johnson does not argue or allege in his brief, however, "that there is a reasonable probability that, but for counsel's errors, he would have accepted the plea agreement." *Hill v. Lockhart,* 106 S.Ct. at 370. Although he argues that he would have been able to accept the agreement but for [counsel's] actions, his freedom to act does not establish a reasonable probability that he would have acted. It is true that, for the first time in his reply brief, Johnson does cite his testimony from the post-conviction challenge to his attorney's actions which he claims illustrates his desire to plead guilty in conjunction with accepting the plea agreement. Nonetheless, Johnson cites no evidence prior to his conviction which would indicate any desire on his part to plead guilty to a lesser charge. Under these circumstances, we seriously doubt whether Johnson's after-the-fact testimony regarding his wishes in and of itself would be sufficient to establish that prior to trial, but for [counsel's] actions, there was a reasonable probability he would have accepted the plea agreement. *See Hill v. Lockhart, supra.*

*Id.*

We agree with the Seventh Circuit that "in the ordinary case criminal defense attorneys have a duty to inform their clients of plea agreements proffered by the prosecution, and that failure to do so constitutes ineffective assistance of counsel under the sixth and fourteenth amendments." *Johnson,* 793 F.2d at 902. Such a duty encourages sound practice by criminal defense attorneys, protects the fundamental rights of their clients, and ensures the integrity of the guilty plea process. The general proposition stated by the Seventh Circuit is consistent with the rule we announced in *Lyles* nearly three decades ago. Nevertheless, it does not relieve a defendant of the burden of establishing by a preponderance of the evidence, pursuant to *Strickland* and *Hill,* that counsel acted unreasonably by failing to inform him of the plea offer and that, but for counsel's actions, there was a reasonable probability that he would have accepted the plea offer. *See id.* and n. 3.[9]

---

**8.** The court added that "it would have been advisable, with the benefit of hindsight, for [counsel] to attempt to elicit a rational response from his client even though he may have believed such action to be futile." *Johnson,* 793 F.2d at 902.

**9.** The Seventh Circuit has held that a defendant must offer "objective evidence" to prove that he would have accepted the State's plea offer but for counsel's actions. *See Paters v. United States,* 159 F.3d 1043, 1047 (7th Cir. 1998) (relying on *Toro v. Fairman,* 940 F.2d 1065 (7th Cir.1991), *cert. denied* (1992)). The

■ Having acknowledged the general rule, we note that Dew's case, like Johnson's, is hardly typical. During the first trial, Dew expressed an interest in pleading guilty. Dew rejected the prosecutor's plea offer, and the jury hung on both counts. Afterward, both Dew's counsel and the prosecutor spoke with members of the jury. At the post-conviction hearing, the prosecutor stated, "I think I learned some things that changed the way I presented my case and [Dew's counsel] learned some things that changed the way he presented his case." PCR Tr. at 32. For example, to rebut Dew's claim that his encounter with T.C. was consensual, the prosecutor called additional witnesses "to show that [T.C.] had not been herself that week [after the incident] and that she had been withdrawn." *Id.* at 34. The hung jury put both Dew and his counsel on notice that the State's case had been strong enough to convince at least five jurors beyond a reasonable doubt that Dew had committed the charged crimes, and the State would attempt to improve its chances for a conviction the second time around. Suffice it to say that after the first trial ended in a hung jury, both sides were playing a whole new ballgame.

It is in this light that we must consider the reasonableness of Dew's counsel's decision not to inform his client about the second plea offer. The terms of that offer might have been the same as those of the first, but we cannot agree with the post-conviction court's conclusion that "there was no new offer." [10] Moreover, we cannot agree with its characterization of the plea negotiations as "fruitless," given that Dew never had an opportunity to consider the second plea offer. Dew initiated plea discussions during the first trial, but he had no duty to do so then or prior to the second trial. On the other hand, Dew's counsel had a duty to "keep [his] client reasonably informed about the status of the matter." Ind. Professional Conduct Rule 1.4(a)(3). Dew's counsel also had a duty to "promptly inform [his] client" of "any decision or circumstance with respect to which [his] client's informed consent" was required by the Professional Conduct Rules. Ind. Professional Conduct Rule 1.4(a)(1).[11] This included the decision

Second Circuit has taken a similar approach. *See United States v. Gordon,* 156 F.3d 376, 381 (2nd Cir.1998). The Sixth Circuit, however, has declined to follow suit, noting that *Strickland* "only requires that a defendant demonstrate that there is a 'reasonable probability' that the result of the proceeding would have been different" and that the U.S. Supreme Court "has imposed no requirement that the defendant meet his burden of proof through objective evidence." *Magana v. Hofbauer,* 263 F.3d 542, 547 n. 1 (6th Cir.2001). We find this reasoning persuasive and therefore agree with the Sixth Circuit on this issue.

10. The fact that the prosecutor made a second offer belies this conclusion, as well as the State's assertion that the first offer was a "standing plea offer." Appellee's Br. at 9. There is no indication that the first plea offer remained open after Dew rejected it.

11. Professional Conduct Rule 1.0(e) defines "informed consent" as "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." Comment 6 states in pertinent part:

The communication necessary to obtain such consent will vary according to the Rule involved and the circumstances giving rise to the need to obtain informed consent. The lawyer must make reasonable efforts to ensure that the client or other person possesses information reasonably adequate to make an informed decision. Ordinarily, this will require communication that includes a disclosure of the facts and circumstances giving rise to the situation, any explanation reasonably necessary to inform the client or other person of the material advantages and disadvantages of the pro-

whether to plead guilty and receive a six-year executed sentence or to risk another jury trial with additional adverse witnesses and a better-prepared prosecutor and receive a much longer sentence. *See* Ind. Professional Conduct Rule 1.4, cmt. 2.[12] Under these circumstances, we conclude that Dew has established that his counsel acted unreasonably in failing to inform him of the State's plea offer.

■ We further conclude that Dew has established that he was prejudiced by counsel's actions. At the post-conviction hearing, Dew's counsel testified that he did not learn about the State's additional witnesses until the day of the second trial and did not know "what they were going to be testifying about[.]" PCR Tr. at 24.[13] On cross-examination, Dew answered the State's questions as follows:

Q So it's your testimony here today that if you had known the two witnesses, two other college kids were going to come into court and testify that the victim seemed upset and nervous and cranky and then finally told them what had happened that that would have changed your mind and you would have come in and pled guilty; is that right?

A Yes, it was. *It wasn't two college kids, it was like four or five people.*

Q Okay. And so you're saying that you would have come into court, into open

---

posed course of conduct and a discussion of the client's or other person's options and alternatives.... A lawyer need not inform a client or other person of facts or implications already known to the client or other person; nevertheless, a lawyer who does not personally inform the client or other person assumes the risk that the client or other person is inadequately informed and the consent is invalid.
Comment 7 states, "Obtaining informed consent will usually require an affirmative response by the client or other person. In general, a lawyer may not assume consent from a client's or other person's silence. Consent may be inferred, however, from the conduct of a client or other person who has reasonably adequate information about the matter." In this case, Dew's counsel never asked Dew whether he wanted to reconsider his decision not to plead guilty. *See* PCR Tr. at 6 ("I didn't talk to him about that. I didn't go see him. I believe he called me collect a couple times."). Instead, counsel made assumptions based on Dew's silence. *See id.* ("He never indicated ever that he wanted to change his mind.").

12. Comment 1 to Rule 1.4 states, "Reasonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation." Comment 2 states:
If these Rules require that a particular decision about the representation be made by the client, paragraph (a)(1) requires that the lawyer promptly consult with and secure the client's consent prior to taking action unless prior discussions with the client have resolved what action the client wants the lawyer to take. For example, a lawyer who receives from opposing counsel an offer of settlement in a civil controversy or a proffered plea bargain in a criminal case must promptly inform the client of its substance *unless the client has previously indicated that the proposal will be acceptable or unacceptable* or has authorized the lawyer to accept or to reject the offer.
(Emphasis added.) We cannot conclude that Dew's rejection of the plea offer during the first trial was a "previous indication" that the same terms would be unacceptable in the future, given that the first trial resulted in a hung jury and the State had an opportunity to bolster its case before the second trial.

13. Dew's counsel's testimony regarding whether he informed Dew about the State's additional witnesses is equivocal at best. *See* PCR Tr. at 6 ("I believe so. I don't personally recollect it though."); *id.* at 11 ("I don't have a particular memory of that, but he did call me a couple times and I think we talked about it. I know we at least talked about it again the day of trial, but I don't have any specific memory of what we discussed when he called me.").

court, sworn under oath that you did it?

A   Yes, I would have.

Q   You would have done that?

A   Yes.

Q   Because of these other people who weren't even there and didn't even have anything to do with it until after the fact, you would have completely changed your position 180 degrees?

A   Completely.

Q   Didn't you try— didn't they try to have a guilty plea during that first trial?

A   *That was the first trial.*

Q   Okay. But you wouldn't plead guilty at that time; is that correct?

A   No, I would not.

*Id.* at 26–27 (emphases added).

Dew's testimony highlights the consequences of counsel's failure to inform him about the State's second plea offer. At least five members of the first jury did not believe Dew's claim that his encounter with T.C. was consensual. The State interviewed the jury and subpoenaed additional witnesses to rebut Dew's claim. Dew had explored the possibility of pleading guilty during the first trial, and there is no indication that he was adamantly opposed to further plea negotiations. As such, we conclude that there is a reasonable probability that, but for his counsel's actions, Dew would have accepted the State's plea offer. The post-conviction court's conclusion that Dew received effective assistance of counsel is clearly erroneous. We therefore reverse Dew's convictions and remand for further proceedings. If the State decides not to renew its plea offer, or if the trial court decides not to accept a guilty plea, then Dew shall be granted a new trial. *See Lyles,* 178 Ind. App. at 402, 382 N.E.2d at 994.

Reversed and remanded.

FRIEDLANDER, J., and MAY, J., concur.