## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 19 2016, 9:39 am

CLERK
of the supreme court,
court of appeals and
tax court

**APPELLANT PRO SE**

DeJuan McIntyre
Michigan City, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DeJuan McIntyre, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | February 19, 2016 <br><br> Court of Appeals Case No. <br> 49A02-1504-PC-256 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Kurt Eisgruber, Judge <br><br> Trial Court Cause No. <br> 49G01-1407-PC-37582 and 49G01-0712-PC-259671 |

**Altice, Judge.**

**Case Summary**

[1] DeJuan McIntyre appeals from the denial of his petition for post-conviction relief (PCR). On appeal, he asserts that the post-conviction court erred in rejecting his claims of ineffective assistance of trial and appellate counsel.

[2] We affirm.

## Facts & Procedural History

[3] The facts underlying McIntyre's convictions were set forth by this court in an unpublished memorandum decision on direct appeal as follows:

> McIntyre and Amy Silva dated "[o]ff and on for about three and a half years." The relationship ended on November 25, 2007. On November 28, 2007, McIntyre went to Silva's workplace. McIntyre was angry and asked Silva if he could look in her car. Silva opened her trunk and told McIntyre that there was no need for him to be at her workplace. McIntyre told Silva that "everything was just going to be taken care of." McIntyre then walked back to his vehicle, pulled back around, and yelled at Silva's coworker, "you work with a crazy bitch and everything's going to be taken care of, don't worry about it...." Silva was afraid and went downtown to file a protective order.
>
> On November 29, 2007, McIntyre called Silva's cell phone multiple times while she was at work. Silva answered one of the calls, and McIntyre "started screaming and yelling" at her. McIntyre said, "Bitch, you think this is a fucking game. This is not a game. I'm going to kill you." Silva called the police and reported the incident.
>
> On the evening of November 30, 2007, Silva, Silva's children, and John Gaines, a family friend, were in Silva's apartment. Someone knocked on the door to the apartment, and Silva

looked through the peephole but did not see anyone. After another knock, Silva again looked through the peephole and saw McIntyre standing to the side. Silva called the "on-site sheriff." McIntyre said that he was the police and knocked continuously on the door. McIntyre kicked the door and the door framing cracked. McIntyre kicked the door again and the door flew open.

McIntyre came into the apartment with a butcher knife and said that he wanted to talk to Silva. McIntyre was holding the knife with the blade facing outward. Gaines told McIntyre that he could talk to Silva but he did not need the knife. McIntyre set the knife down for a "split second" and then picked it up. McIntyre led Gaines and Silva's son toward the back bedroom.

In a "split second," McIntyre "lunged" forward toward Silva. Gaines then grabbed McIntyre, and Gaines and Silva's son attempted to hold McIntyre back, but McIntyre struck Silva in the head with the blade of the knife. McIntyre and Gaines "tussled a little bit," and McIntyre eventually left. Silva suffered a "laceration or a bleeding wound to her head," and Gaines suffered a "very large laceration to the back of the scalp."

*McIntyre v. State*, No. 49A05-0902-CR-56, slip op. at *1 (Dec. 8, 2009) (record citations omitted). McIntyre was ultimately convicted of burglary as a class A felony, two counts of battery as a class C felony (one count for battering Silva and another for battering Gaines), and two counts of domestic battery as a class D felony against Silva.

[4] On direct appeal, McIntyre challenged the sufficiency of the evidence supporting his burglary conviction and his conviction for battering Gaines. He also argued that his convictions violated the prohibition against double

jeopardy. This court concluded that the State presented sufficient evidence to support the convictions, but that McIntyre's convictions ran afoul of double jeopardy protections. The court therefore vacated McIntyre's convictions for domestic battery and battery against Silva. McIntyre's convictions for class A felony burglary and class C felony battery against Gaines remained undisturbed.

[5] McIntyre filed a pro se petition for post-conviction relief (PCR) on September 17, 2010, which he amended on February 22, 2012, and May 13, 2013. In the petition, McIntyre alleged that he received ineffective assistance of both trial and appellate counsel. The post-conviction court held evidentiary hearings on November 19, 2013, and February 25, 2014, after which the court took the matter under advisement. On April 15, 2015, the post-conviction court issued its order denying McIntyre's PCR petition. McIntyre now appeals.

## Discussion & Decision

[6] As an initial matter, we note that McIntyre is proceeding pro se on appeal.[1] Pro se litigants are held to the same standard as trained counsel and are required to follow procedural rules. *Smith v. State*, 38 N.E.3d 218, 220 (Ind. Ct. App. 2015). McIntyre's appellate brief is littered with misquotations of the record,

---

[1] We also note that the State has not filed a brief in this matter. Accordingly, McIntyre will prevail on appeal if he makes a prima facie case of error. *See Sims v. State*, 771 N.E.2d 734, 737 n.1 (Ind. Ct. App. 2002), *trans. denied*. "However, this circumstance in no way relieves us of our obligation to decide the law as applied to the facts in the record in order to determine whether reversal is required." *Id.*

and McIntyre repeatedly omits portions of quotations without noting the alteration. Moreover, McIntyre attributes quotes to his appellate counsel that do not appear anywhere in the record.[2] McIntyre's pro se status does not excuse his multiple mischaracterizations of the record.

[7]     Turning now to the merits of McIntyre's appeal, we note that in a post-conviction proceeding, the petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Bethea v. State*, 983 N.E.2d 1134, 1138 (Ind. 2013). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* (quoting *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004)). In order to prevail, the petitioner must demonstrate that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite the post-conviction court's conclusion. *Id.* Although we do not defer to a post-conviction court's legal conclusions, we will reverse its findings and judgment only upon a showing of clear error, i.e., "that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* (quoting *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000)).

## 1. Ineffective Assistance of Trial Counsel

---

[2] According to McIntyre, when asked whether she had read a specific case, appellate counsel testified that she "was not aware of that case when preparing the brief[.]" *Appellant's Brief* at 15. Appellate counsel said no such thing. Instead, she testified that she had no specific recollection of whether she read the case, but "if the case was available, [she] probably read it[.]" *PCR Transcript* at 39.

A petitioner will prevail on a claim of ineffective assistance of counsel only upon a showing that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the petitioner. *Bethea*, 983 N.E.2d at 1138. To satisfy the first element, the petitioner must demonstrate deficient performance, which is "representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id.* (quoting *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002)). To satisfy the second element, the petitioner must show prejudice, which is "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id.* at 1139. "A reasonable probability is one that is sufficient to undermine confidence in the outcome." *Kubsch v. State*, 934 N.E.2d 1138, 1147 (Ind. 2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). Because a petitioner must prove both deficient performance and prejudice in order to prevail on a claim of ineffective assistance of counsel, the failure to prove either element defeats such a claim. *See Young v. State*, 746 N.E.2d 920, 927 (Ind. 2001) (holding that because the two elements of *Strickland* are separate and independent inquiries, the court may dispose of the claim on the ground of lack of sufficient prejudice if it is easier).

McIntyre first argues that his trial counsel was ineffective for failing to object to the introduction of evidence prohibited under Ind. Evidence Rule 404(b). However, our review of the record reveals that trial counsel did object to the

introduction of this evidence on that basis at both a pretrial hearing and during trial. McIntyre's argument in this regard is therefore meritless.

[10] Next, McIntyre argues that his first, privately-hired trial counsel was ineffective for withdrawing due to McIntyre's failure to fulfill his financial obligations. McIntyre's private counsel filed his motion to withdraw nearly eight months before the case was tried, and the trial court appointed the Public Defender Agency to represent McIntyre on the same day it granted private counsel's motion to withdraw. McIntyre has made no attempt to explain any prejudice he suffered as a result of private counsel's withdrawal. Accordingly, he has not established trial counsel ineffectiveness on this basis.

[11] McIntyre also argues that his trial counsel was ineffective for failing to communicate a plea offer to him. The post-conviction court rejected this claim, finding that McIntyre had failed to produce any evidence that a plea offer was made. The only evidence in the record supporting McIntyre's claim that a plea offer was made is a statement of the prosecuting attorney at a pretrial hearing, at which McIntyre was present, that she had emailed defense counsel a plea offer the previous day. At the time of the PCR hearing, defense counsel could not recall whether he had received a plea offer.

[12] Even if we assume that the State made a plea offer and that defense counsel failed to communicate that offer to McIntyre, we still conclude that McIntyre has not established that trial counsel was ineffective. In *Dew v. State*, this court held that defense attorneys have a duty to inform their clients of proffered plea

agreements, and failure to do so constitutes ineffective assistance of trial counsel if the defendant can establish "that counsel acted unreasonably by failing to inform him of the plea offer and that, but for counsel's actions, there was a reasonable probability that he would have accepted the plea offer." 843 N.E.2d 556, 569 (Ind. Ct. App. 2006), *trans. denied*. McIntyre has wholly failed to introduce any evidence establishing a reasonable probability that he would have accepted the plea offer had he been aware of it. Indeed, he has not even introduced evidence concerning the substance of the purported plea offer. Accordingly, McIntyre has not made the requisite showing of prejudice.

[13] McIntyre also argues that trial counsel was ineffective for inadequately impeaching one of the State's witnesses. Specifically, McIntyre asserts that counsel should have introduced Gaines's pretrial deposition into evidence. Our review of the record reveals defense counsel sought to admit the deposition into evidence as a prior inconsistent statement, but the trial court concluded that the deposition itself was inadmissible. Defense counsel was allowed to use the deposition to refresh Gaines's recollection and to impeach his testimony. On appeal, McIntyre argues that counsel was ineffective for failing to lay a proper foundation for the admission of the deposition. McIntyre has not explained how the deposition was admissible or what was required to establish a proper foundation. Nor has he included the deposition in the record or made any attempt to explain how the substance of the deposition would have aided his defense or further undermined Gaines's credibility. Consequently, McIntyre

has failed to establish either deficient performance or prejudice resulting from the exclusion of the deposition.

## 2. Ineffective Assistance of Appellate Counsel

[14] McIntyre also argues that his appellate counsel was ineffective for failing to cite certain authority in support of the double jeopardy argument presented on direct appeal. "The standard by which we review claims of ineffective assistance of appellate counsel is the same standard applicable to claims of trial counsel ineffectiveness." *Wright v. State*, 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *trans. denied.* Our supreme court has recognized three types of ineffective assistance of appellate counsel: (1) denial of access to appeal; (2) failure to raise issues that should have been raised; and (3) failure to present issues well. *Wrinkles v. State*, 749 N.E.2d 1179, 1203 (Ind. 2001). McIntyre's claim falls into the third category. Our Supreme Court has noted that "claims of inadequate presentation of certain issues, as contrasted with the denial of access to an appeal or waiver of issues, are the most difficult for defendants to advance and for reviewing tribunals to support." *Holowell v. State*, 19 N.E.3d 263, 270 (Ind. 2014). This is the case because such claims require the reviewing court to reexamine specific issues on which it has already ruled to determine "whether the new record citations, case references, or arguments would have had any marginal effect on their previous decision." *Bieghler v. State*, 690 N.E.2d 188, 195 (Ind. 1997). Additionally, Indiana's appellate courts are not limited to the cases cited and arguments made by appellate counsel, and "[w]e commonly review relevant portions of the record, perform separate legal research, and

often decide cases based on legal arguments and reasoning not advanced by either party." *Id.*

[15] McIntyre's argument is difficult to fully understand, but it appears to turn on a claim that his appellate counsel was ineffective for failing to cite *Campbell v. State*, 622 N.E.2d 495 (Ind. 1993), *abrogated in part by Richardson v. State*, 717 N.E.2d 32 (Ind. 1999). We note that McIntyre's appellate counsel successfully raised a double jeopardy argument, resulting in three of McIntyre's five convictions being vacated. Moreover, although appellate counsel did not cite *Campbell*, this court cited that case in its memorandum decision on McIntyre's direct appeal. *See McIntyre*, No. 49A05-0902-CR-56, slip op. at *5 n.8. Because this court clearly considered *Campbell*, we cannot conclude that appellate counsel's citation of that case would have had an impact on the outcome of McIntyre's direct appeal.

[16] In any event, *Campbell* is clearly distinguishable from the case at hand and would not compel the reversal of McIntyre's remaining battery conviction. In *Campbell*, the defendant was sentenced for class A felony burglary and class C felony battery after he broke into a home where his ex-girlfriend was staying the night and slashed her face with a sharp object. 622 N.E.2d at 497. Our Supreme Court concluded that the defendant was improperly sentenced for class C felony battery because "the enhanced felony level of both crimes was based upon the same injurious consequences," i.e., the slashing of the victim's face. *Id.* at 500.

[17] In this case, however, McIntyre inflicted two separate injuries on two separate victims. In keeping with double jeopardy principles, McIntyre's domestic battery convictions and the class C felony battery conviction based on the injury he inflicted on Silva were vacated. *See McIntyre*, No. 49A05-0902-CR-56, slip op. at *5 (explaining that "the very same act, i.e., McIntyre's touching of Silva, formed the basis of both of the domestic battery convictions . . . , one of the battery convictions . . . , and the enhancement of the burglary conviction to a class A felony"). McIntyre is not entitled to also have his class C felony battery conviction based on the injury he inflicted on Gaines vacated. For all of these reasons, McIntyre has not established that his appellate counsel was ineffective.

[18] Judgment affirmed.

[19] Robb, J., and Barnes, J., concur.