## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 25 2017, 10:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Herbert Robertson
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Herbert Robertson,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent*

September 25, 2017

Court of Appeals Case No.
82A05-1610-PC-2303

Appeal from the Vanderburgh
Circuit Court

The Honorable Kelli E. Fink,
Magistrate

Trial Court Cause No.
82C01-1212-PC-27

**Baker, Judge.**

[1] Herbert Robertson appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erroneously denied his request for an evidentiary hearing, his motion to compel affidavits, and his motion for interlocutory appeal. Robertson also claims that the post-conviction court erroneously determined that he did not receive the ineffective assistance of trial counsel. Finding no error, we affirm.

# Facts

[2] The underlying facts as set forth in Robertson's direct appeal are as follows:

> During the evening of December 21, 2009, Andrea Atterberry was working alone at a Vanderburgh County liquor store. Robertson entered the store and purchased a half pint of vodka and asked for change for the soda machine. About an hour later, Robertson returned, bought another half pint of vodka, and asked Atterberry when her shift was over. Robertson entered the store a third time and asked Atterberry for change for a ten-dollar bill. Atterberry opened the cash register drawer and got the change. When she looked up, Robertson had a knife and demanded, "[B]**ch give me the money in the drawer." She declined and called 911. While Atterberry was talking to the 911 operator, Robertson screamed and stabbed at her with the knife. Atterberry threw the money at him, and he left. The police arrived, but Robertson was gone.
>
> That day, Atterberry provided a description of the robber to Evansville Police Detective Tony Mayhew that was recorded and transcribed. Atterberry described the robber as about five feet eight inches tall, around 220 pounds, with blue eyes and a two-to-three-day beard growth, and wearing a black stocking cap, a blue hooded jacket, a blue button shirt, light colored jeans, and black shoes.

A month or two later, Detective Mayhew was investigating an unrelated liquor store theft and noticed that the suspect in that case . . . fit Atterberry's description. Detective Mayhew showed Atterberry a photo array of six men, which included [the other suspect] but not Robertson. Atterberry did not identify any of the men as the actual robber, but said that of the six men, [the other suspect] most resembled the robber. About a week later, Detective Mayhew showed Atterberry approximately fifty photographs, none of which were of Robertson. Atterberry said that none of the photographs were of the man who had robbed her.

Sometime later, Atterberry informed Detective Mayhew that she remembered that the robber had previously come into the store with a woman whom Atterberry would recognize. After Atterberry identified that woman in a photo array, Detective Mayhew showed her another photo array containing Robertson's picture. Atterberry immediately identified Robertson as the robber.

The State charged Robertson with class B felony armed robbery and with being a habitual offender.

*Robertson v. State*, No. 82A01-1110-CR-465, *1-*3 (Ind. Ct. App. June 21, 2012) (internal citations omitted).

[3] Robertson's trial began on July 5, 2011. At trial, the State called Atterberry and Detective Mayhew to testify. During cross-examination, Robertson's trial counsel elicited several key facts: (1) that Atterberry had failed to inform Detective Mayhew that the robber had been in the store on two other occasions the night of the robbery; (2) that Atterberry had failed to tell Detective Mayhew that she had seen the robber in the store with a woman prior to the night in

question; (3) that her initial description of the robber to both the 911 operator and Detective Mayhew was imprecise as to the estimated height, the estimated weight, and the perceived hair and eye color, when comparing her description with Robertson; (4) that she initially identified another man as looking "very similar" to the robber in a photo array; (5) that she failed to initially mention a purported gap in the robber's teeth; and (6) that, based on Atterberry's imprecise description, the police initially suspected someone else as the robber. Trial Tr. p. 48-55, 60-67, 134-36, 146-50, 159-69.

[4] Jury deliberations began on July 5, 2011. On the second day of jury deliberations, one juror fell ill and was replaced by the alternate, who had been selected earlier without objection. Following deliberations, the jury found Robertson guilty of class B felony armed robbery, and the trial court found that Robertson was an habitual offender. We affirmed Robertson's conviction.

[5] On November 28, 2012, Robertson filed a pro se petition for post-conviction relief. After one and one-half years of investigation, on January 13, 2016, Robertson filed an amended petition for post-conviction relief and a motion for an evidentiary hearing on his petition. The post-conviction court denied the motion for an evidentiary hearing on January 20, 2016. On the same day, the post-conviction court ordered the case to proceed by affidavit, giving Robertson until March 25, 2016, and the State until May 20, 2016, to file any affidavits or proposed findings. On March 7, 2016, the post-conviction court denied Robertson's certification for interlocutory appeal. On March 15, 2016, the post-conviction court denied Robertson's motion to compel affidavits, though the

court noted that it was amenable to providing additional time for Robertson to acquire additional affidavits if he made a written request.

[6] After submitting his own affidavit, Robertson was granted a continuance until May 20, 2016, to file affidavits and proposed findings. On May 9, 2016, Robertson filed proposed findings of fact and conclusions of law. On September 19, 2016, the post-conviction court issued its findings of fact and conclusions of law denying post-conviction relief. Robertson now appeals.

# Discussion and Decision

[7] Robertson raises six issues, which we consolidate into two: (1) whether the post-conviction court erred by denying his motion for an evidentiary hearing, his motion to compel affidavits, and his motion to certify for interlocutory appeal; and (2) whether the post-conviction court erred in finding that Robertson did not receive the ineffective assistance of counsel.

# I.    Standard of Review

[8] The general rules regarding the review of a petition for post-conviction relief are well established:

> "The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). "When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion

opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (quotation omitted).

*Hollowell v. State*, 19 N.E.3d 263, 268-69 (Ind. 2014).

When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687-88). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694).

*Humphrey v. State*, 73 N.E.3d 677, 682 (Ind. 2017). "A reasonable probability arises when there is a 'probability sufficient to undermine confidence in the outcome.'" *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694). "Failure to establish either of the two prongs will

cause the claim to fail." *Gulzar v. State*, 971 N.E.2d 1258, 1261 (Ind. Ct. App. 2012).

# II. Procedural Matters

# A. Evidentiary Hearing

Robertson first claims error in the post-conviction court's decision to deny his request for an evidentiary hearing and, instead, to proceed by affidavit. Indiana Post-Conviction Rule 1(9)(b) sets forth the rules for a pro se litigant:

> In the event petitioner elects to proceed pro se, the court at its discretion may order the cause submitted upon affidavit. It need not order the personal presence of the petitioner unless his presence is required for a full and fair determination of the issues raised at an evidentiary hearing. If the pro se petitioner requests issuance of subpoenas for witnesses at an evidentiary hearing, *the petitioner shall specifically state by affidavit the reason the witness' testimony is required and the substance of the witness' expected testimony*. If the court finds the witness' testimony would be relevant and probative, the court shall order that the subpoena be issued.

(emphasis added).

"[I]f the [post-conviction court] orders the cause submitted by affidavit under Rule 1(9)(b), it is the court's prerogative to determine whether an evidentiary hearing is required, along with the petitioner's personal preference, to achieve a 'full and fair determination of the issues raised[.]'" *Smith v. State*, 822 N.E.2d 193, 201 (Ind. Ct. App. 2005) (quoting P-C.R. 1(9)(b)). We will reverse only if

"its decision is against the logic and effect of the facts and circumstances before it." *Pannell v. State*, 36 N.E.3d 477, 486 (Ind. Ct. App. 2015), *trans. denied*.

[11] Robertson's motion to set an evidentiary hearing failed to specifically state, by affidavit, the reasons why the testimony of the named parties was necessary and what the substance of that testimony would be. Instead, Robertson simply made conclusory statements in the motion such as "Petitioner intends to call trial counsel . . . to show . . . that [trial counsel] was ineffective, unprepared, and failed to test the States [sic] case . . ." and "[W]itnesses will offer Material Facts that were not heard by the jury, and are required for the petitioner to carry his burden of proof . . . ." Appellant's App. Vol. III p. 16 (original emphasis omitted). As such, Robertson failed to meet his burden under Post-Conviction Rule 1(9)(b).

[12] While he did not submit an affidavit in support of his request for an evidentiary hearing,[1] Robertson contends that his petition for post-conviction relief adequately informed the post-conviction court of what he intended to elicit from the proposed witnesses. Rule 1(9)(b) explicitly requires an affidavit containing sufficient information for the post-conviction court to determine if a hearing is needed. Robertson's post-conviction petition itself does not suffice.

---

[1] Robertson submitted his own affidavit in support of his petition for post-conviction relief, but it fails to specifically state which parties Robertson would like to have testify—except, perhaps, his trial counsel—or why their in-court testimony would be required.

Without any affidavits or other clear evidence of the substance of the proposed testimony, it would have been next to impossible for the post-conviction court to determine the necessity of holding an evidentiary hearing. Thus, we cannot say that the post-conviction court's denial of the request for an evidentiary hearing was erroneous.

## B. Motion to Compel Affidavits

The post-conviction court has discretion to rule on a petitioner's request for a subpoena and it will only be reversed if the decision "is against the logic and effect of the facts and circumstances before the court." *Johnson v. State*, 832 N.E.2d 985, 994 (Ind. Ct. App. 2005). In his motion to compel affidavits, Robertson requested the post-conviction court to compel the following witnesses to submit affidavits: his trial counsel, a detective, the 911 operator, the other suspect's former girlfriend, and the alternate juror. Robertson claims that he attempted to procure affidavits and was ignored by all proposed affiants twice. The post-conviction court attempted to accommodate Robertson, first by extending the deadline for submission of Robertson's affidavits to May 20, 2016, and then by leaving open the possibility of further extension, if Robertson made a written request to the court. Nevertheless, Robertson filed his proposed findings of fact and conclusions of law nearly two weeks early, and made no requests for additional time to acquire the affidavits.

Robertson fails to cite to any evidence that corroborates his allegation that he was being ignored, such as copies of his requests to the proposed affiants.

Further, Robertson's argument does not address the fact that the post-conviction court was willing to give Robertson more time to gather facts—an opportunity of which Robertson failed to take advantage. The post-conviction court acted reasonably by granting Robertson more time to either build his case or prove that he was being ignored, rather than granting him the specific relief he sought. Thus, we cannot say that the post-conviction court's denial of the motion to compel affidavits was erroneous.[2]

# III. Ineffective Assistance of Trial Counsel

## A. Impeachment of Atterberry

[16] Robertson first claims that trial counsel's performance was deficient because trial counsel's impeachment of Andrea Atterberry, the store clerk who was the sole eyewitness to the crime, did not utilize police reports, her sworn statements, or the recording of her 911 call to more fully impeach and attack her credibility. Specifically, Robertson focuses on trial counsel's alleged failure to emphasize Atterberry's earlier inconsistent statements and identifications regarding the robber. The post-conviction court found that trial counsel "conducted extensive cross-examination" of Atterberry and that "the information that [trial counsel] did not elicit would not have resulted in prejudice to Petitioner in light of the fact that [Atterberry] identified Petitioner

---

[2] Robertson also contends that the post-conviction court should have granted his motion to certify some of these issues for discretionary interlocutory appeal. *See* Ind. Appellate Rule 14. However, he failed to specifically address this issue in his briefs. Accordingly, he has waived this argument.

at trial and in an earlier photo array as the person who committed the robbery." Appellant's App. Vol. II p. 31.

[17]   As stated above in the facts section, there is ample evidence in the record that trial counsel vigorously and skillfully cross-examined Atterberry and did, in fact, attempt to undercut her credibility by pointing to her inconsistent past statements. *See Waldon v. State*, 684 N.E.2d 206, 208 (Ind. Ct. App. 1997) (noting that "the nature and extent of cross-examination is a matter of trial strategy delegated to trial counsel."). Nothing in the record leads us to conclude that the post-conviction court erred by finding that trial counsel was not ineffective for deciding not to use the specific pieces of evidence highlighted by Robertson. We decline to reverse on this basis.

## B. 911 Call

[18]   Robertson next contends that trial counsel was ineffective for failing to provide a copy of the 911 call to Robertson[3] and for not offering it into evidence at trial so that the jury might have compared the voice in the call to his own. Robertson alleges that a comparison of this recording to his own voice would have convinced the jury of his innocence and further impeached Atterberry. Robertson's assertions are meritless. As noted above, trial counsel thoroughly highlighted these issues during the cross-examination of Atterberry and

---

[3] Robertson fails to cite to any relevant authority or make any cogent argument for the proposition that trial counsel had a duty to present Robertson with a copy of the 911 call or that counsel had a duty to consult with him on whether to seek a voice recognition expert. Accordingly, he has waived these arguments.

Detective Mayhew. These points were also emphasized to the jury in Robertson's closing statements. Therefore, nothing in the record establishes either that trial counsel's performance was deficient or, even if it was, that Robertson was prejudiced as a result. We find that the post-conviction court did not err in concluding that Robertson did not receive the ineffective assistance of trial counsel on this issue.

## C. Witness Issues

[19] Robertson next alleges that trial counsel's failure to file a defense witness list and his decision not to call certain witnesses rendered his assistance ineffective. Specifically, Robertson claims that, had a witness list been filed, trial counsel could have called four additional witnesses, including: the other suspect; the other suspect's former girlfriend; the 911 operator; and a detective.

[20] The record shows that none of these witnesses were excluded because of a witness list. The trial court excluded testimony from the other suspect because the testimony did not comply with rules regarding the use of evidence to establish that someone else committed the crime at issue. None of the remaining witnesses were excluded at all—because trial counsel chose not to call them. There is no evidence that his decision was based on the lack of a witness list. Therefore, Robertson cannot demonstrate prejudice because none of the proposed witnesses were excluded because of a failure to file a witness list.

[21]   Robertson also contends that counsel's decision not to call these witnesses rendered his performance ineffective. We note that "[a] decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess." *Brown v. State*, 691 N.E.2d 438, 447 (Ind. 1998). The post-conviction court concluded in part that:

> Petitioner has not presented any affidavits of these possible witnesses to allow this Court to make a determination of whether or not there [sic] testimony would have been relevant. If the testimony would have been relevant, the Court then would have needed to make a determination as to whether or not trial counsel's failure to call the witnesses was ineffective. Without additional information, this Court is unable to determine if the failure to call these witnesses was ineffective or if the result of the proceeding would have been different if these witnesses would have been called to testify at trial.

Appellant's App. Vol. II p. 35. We echo the post-conviction court's sentiment. There is no evidence as to the substance of any testimony beyond Robertson's conclusory speculations. Therefore, it is impossible to determine the value or relevance of any of these potential witnesses' testimony and it is impossible to determine if not calling them went beyond poor trial tactics and otherwise resulted in discernible prejudice. Accordingly, we cannot say that we are left with a definite and firm conviction that the post-conviction court erred in finding that trial counsel was not ineffective on this issue.

# D. Alternate Juror Instruction

[22] Before jury deliberations began, the trial court instructed all jurors, including the alternate, as follows:

> To return a verdict, each of you must agree to it. Each of you must decide the case for yourself, but only after considering the evidence with the other jurors. It is your duty to consult with each other. You should try to agree on a verdict, if you can do so without compromising your individual judgment. Do not hesitate to re-examine your own views and change your mind if you believe you are wrong. But do not give up your honest belief just because the other jurors may disagree, or just to end the deliberations. After the verdict is read in court, you may be asked individually whether you agree with it.

Trial Tr. p. 473. After the jury left the courtroom to deliberate, the alternate juror was permitted to return home, so long as he did not impair his judgment. When the trial court excused the sick juror, the alternate returned and joined the jury. The post-conviction court found "no evidence . . . that [Robertson] was prejudiced by the replacement . . . or that [trial counsel] had any basis to object to the alternate juror returning for deliberations." Appellant's App. Vol. II p. 33. Robertson was not present or consulted when the juror was replaced. He contends that he was prejudiced because: (1) he had a right to be present for the decision to use the alternate juror and (2) the jury should have begun deliberations anew or should have been given specific new instructions for the alternate juror to properly participate.

[23]    With respect to his first claim, Robertson fails to cite to any authority suggesting that participation in the placement of an alternate juror is in any way a decision that is fundamental to his defense. *See Dew v. State*, 843 N.E.2d 556, 565 (Ind. Ct. App. 2006) (noting that a defendant has a constitutional right to participate in making decisions which are "fundamental" to his or her defense). There were no objections to the selection of the alternate juror during voir dire and there is no reason to conclude that there would have been a meritorious basis for challenging the placement of the alternate juror once the other juror became ill. As such, Robertson has failed to establish either that trial counsel acted below the standard of care or that Robertson suffered any material prejudice by it.

[24]    With respect to his second claim, Robertson has failed to allege any prejudice from the use of the alternate juror. Specifically, Robertson has not alleged, in any way, that the use of the alternate juror impacted the decision of the jury beyond bald guesses that group deliberations did not occur and that the rest of the jury had already decided Robertson's guilt before the alternate juror joined. As he has shown no prejudice, Robertson's claim on this issue fails.

## E. Alibi Instruction

[25]    Finally, Robertson claims that his trial counsel was ineffective for failing to request a jury instruction encompassing an alibi defense. Specifically, Robertson focuses on trial counsel's pre-trial notice to use an alibi defense and subsequent decision not to seek it. Robertson's sole alibi witness was Lisa

White. White testified that she and Robertson stayed with each other from December 19 through December 21, 2009, at the Knight's Inn on East 21st Street in Indianapolis. However, at trial, the State impeached White's testimony in two ways. First, the State introduced the Knight's Inn's business records, which indicated that no one named Robertson or White had stayed at that location on the dates testified to by White. Second, Detective Mayhew testified that there were no records at the Knight's Inn of either White or Robertson staying there. Moreover, the jury submitted questions to White, including whether White could produce a receipt from her alleged stay, which she could not.

[26]   It is apparent that trial counsel may have reasonably and strategically opted for the defense of misidentification by Atterberry, rather than an alibi defense, after White's testimony was so severely undercut by the State. "Counsel is afforded considerable discretion in choosing strategy and tactics, and we accord that decision deference." *Connor v. State*, 711 N.E.2d 1238, 1248 (Ind. 1999). Considering the deference given to counsel on matters of trial strategy, and considering the impeachment of White's testimony and the jury's own inquiries about White, we cannot say that trial counsel's decision to decline to request an alibi instruction was a failure of his duty of care or that any prejudice resulted from his decision to forgo this instruction. Thus, Robertson's claim must fail.

[27]   The judgment of the post-conviction court is affirmed.

Mathias, J., and Pyle, J., concur.